UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____X

MARY L. MORRIS,

                 **Plaintiff,**                           Case No.

      -against-                                 **COMPLAINT**

**AUSTIN LLOYD, INC.,**
**AUSTIN COINS, INC.,**
**PATRICK J. WHITE,**
**ERIC P. LESAK (ALIAS "MIKE TODD"),**
**MICHAEL "MIKE" CARUSO,**
**SEAN KLEIN,**
**BRANDON E. CHANCEY,**
**JOHN DOE, AS THE REPRESENTATIVE OF THE**
**ESTATE OF CHRISTOPHER M. PARADISE, DECEASED,**
**CHARISMA PERRY,**
**P. WHITE HOLDINGS, LLC,**
**P WHITE INC.,**
**NEW YORK FEDERAL GOLD, LLC,**
**CASH MONEY BULLION CORP.,**
**JUST JOHN, LLC,**
**CNP13, INC.,**
**BULLION MUSCLE INC.,**
**BKGS HOLDINGS, INC. and**
**CHRISTOPHER PARADISE & ASSOCIATES, INC.,**

                 **Defendants.**
_____X

       Plaintiff, Mary L. Morris  ("Ms. Morris" or "Plaintiff") complaining of the *Corporate Defendants*, Austin Lloyd, Inc. ("Austin Lloyd") and Austin Coins, Inc. ("Austin Coins"), the *Individual Defendants*, Patrick J. White ("White"), Eric P. Lesak (alias "Mike Todd") ("Lesak"), and Michael "Mike" Caruso ("Caruso"), the *Conspiracy Defendants,* Sean Klein ("Klein"), Brandon E. Chancey ("Chancey"), and John Doe, as the Representative of the Estate of Christopher M. Paradise, deceased ("Paradise"), and the *"Aiding and Abetting" Defendants,*

Charisma Perry ("Perry"), , P. White Holdings, LLC ("PWH"), P White Inc. ("PWI"), New York Federal Gold, LLC ("NYFG"), Cash Money Bullion Corp. ("CMBC"), Just John, LLC ("Just John"), CNP13, Inc. ("CNP13"), Bullion Muscle Inc. ("Bullion Muscle"), BKGS Holdings, Inc. ("BKGS"), and Christopher Paradise & Associates, Inc. ("CP&A"), through the undersigned counsel files his Original Complaint and respectfully alleges:

## NATURE OF THE CASE

1.    Plaintiff brings this action pursuant to the Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. §§ 1961-1968 (RICO) and New York law. This case involves a primary fraud scheme and a conspiracy to commit fraud by a group of Long Island precious metal coin dealers who conspired to and did, in fact, commit telemarketing fraud against Plaintiff and numerous other elderly citizens[1] through and under the auspices of the Corporate Defendants, Austin Coins, Inc. and Austin Lloyd, Inc. Austin Lloyd, Inc. (the "Austin Lloyd Enterprise") is  a RICO enterprise within the meaning of 18 U.S.C. §§ 1961(4) and 1962(b)-(d)).

2.    The Austin Lloyd Enterprise's scheme was conducted by the Individual Defendants and facilitated by the Conspiracy Defendants, with the knowing assistance and support of the "Aiding and Abetting" Defendants through an "open-ended" pattern of racketeering activity of specific predicate acts, consisting specifically, in Ms. Morris' case, of scamming Ms. Morris over the

---

[1]  Coin fraud targeting the elderly has a long history in the Eastern District of New York. *See, e.g., United States v. Romano*, No. 09-CR-168 (SJ) (VMS), 2013 U.S. Dist. LEXIS 208446, at *19 n.5 (E.D.N.Y. 2013) and the testimony adduced at the criminal RICO coin fraud trial against Michael Romano and William Kearney:

Patrick Coleman, Defendants' former employee, testified at trial that . . .  Mr. Kearney's avowed sales tactics were to "crush weak people" and to "confuse the shit" out of "older people." . . . Daren Mutone, a former employee of Atlantic Coin Galleries, testified at trial that the Atlantic Coin Galleries salespeople would make fun of the victims because they were old and easier to convince. . . . Mr. Mutone testified that the elderly were "easier to push around," and that Mr. Romano and Mr. Kearney would hear the jokes and push the sales staff to sell even more coins to a victim who showed susceptibility to pressure and manipulation.

telephone[2] into shipping via interstate common carrier her inventory of precious metal coins to the Defendants "strictly for appraisal purposes" and then, rather than appraising and returning the coins as promised, the Defendants instead stole and converted Ms. Morris' inventory of coins, all in furtherance of the Austin Lloyd Enterprise and to enrich themselves. In addition, or else in the alternative, Plaintiff alleges common law fraud and other torts and violations, resulting in significant damages to Ms. Morris.

3.    The ***Individual Defendants*** are principals (i.e. White) and officers/representatives/telemarketing agents of the Corporate Defendants, Austin Lloyd and Austin Coins, (i.e, Lesak and Caruso) who scammed and defrauded Ms. Morris, and who, along with the ***Conspiracy Defendants*** (i.e., Defendants Klein, Chancey, and Paradise), as officers, representatives and/or telemarketing sales agents of the Corporate Defendants, are all members of the Austin Lloyd Enterprise and who maintained an interest in and/or exerted control over the enterprise within the meaning of 18 U.S.C. § 1962(b) and/or who, working in combination to advance the Austin Lloyd Enterprise, and to enrich themselves, had a meeting of the minds, came to an agreement, and conducted and participated to further the Austin Lloyd Enterprise by conspiring within the meaning of 18 U.S.C. § 1962(d) to swindle, defraud, and rob Ms. Morris and other elderly customers[3] of all or part of their life savings through phony and fraudulent telemarketing coin sales and precious metals investment scams.

4.    The ***"Aiding and Abetting" Defendants***, Perry, PWH, PWI, NYGC, CMBC, Just John, CNP13, Inc., Bullion Muscle, BKGS, and CP&A, also conspired with the Individual Defendants

---

[2] On information and belief, the Austin Lloyd telemarketers recorded their telephone conversations with Ms. Morris and maintain all of those recorded telephone conversations to the present.

[3] In this Complaint, whenever the term "customer(s)" appears, Plaintiff intends it to mean both "customer(s)" and "consumer(s)."

to accomplish the Austin Lloyd Enterprise's fraud schemes against elderly customers of Austin Lloyd and Austin Coins, including Ms. Morris, and/or aided and abetted those fraud schemes with knowledge of said schemes and provided substantial assistance to advance the commission of those fraud schemes and to launder the enterprise's ill-gotten gains.

5.    Even were some or all of the Defendants determined not to have personally committed any predicate acts, each agreed to join and participate in the Austin Lloyd Enterprise with knowledge that the predicate acts of coin and precious metals fraud would be committed by other member(s) of the enterprise. Thus, each of the Defendants is liable for the torts of each of the other co-conspirators.

6.    **Plaintiff** Mary L. Morris, an 85-year-old retired school teacher, fell prey to the Individual Defendants' fraudulent scheme in furtherance of the Austin Lloyd Enterprise which has targeted numerous elderly telemarketing customers over a period of years, continuing to the present, and which is facilitated by and conducted through use of the U.S. mail and U.S. wires in violation of 18 U.S.C. §§ 1341, 1343 and which resulted in direct damages to Ms. Morris of at least **Fifty-Nine Thousand Four Hundred Twenty-Six  and 30/100s Dollars** ($**59,426.30**) as part of an open-ended,[4]  systematic pattern of fraud targeting elderly customers, as well as breach of fiduciary

---

[4]   Unfortunately, Ms. Morris is far from the only elderly customer to complain of identical or similar coin fraud "investment" and "consignment sale/appraisal" schemes by the Individual Defendants in furtherance of the Austin Lloyd Enterprise. *See, e.g., Stephen E. Mauch v. Austin Lloyd, Inc., et al*., Case No. 2:22-cv-04180 (E.D.N.Y.) filed July 16, 2022 (alleging similar fraud scheme and damages of $1.8 million to elderly corn farmer); *Jeffrey Miller v. Austin Lloyd, Inc., et al*., Case No. 2:23-cv-06140 (E.D.N.Y.) (alleging similar fraud scheme and damages of $51,300.00 to elderly, retired dentist) filed August 15, 2023; *Allan R. Miller and Cheryl A. Miller v. v. Austin Lloyd, Inc., et al*., Case No. 2:23-cv-06207 (E.D.N.Y.) (alleging similar fraud schemes and damages of $92,000,00 to an elderly couple) filed August 17, 2023; *Earl E. Keith v. Austin Lloyd, Inc., et al.*, Case No. 2:23-cv-09461 (E.D.N.Y.) (alleging similar fraud scheme and damages of over $244,000.00 to 82-year-old victim) filed December 22, 2023; *AnnaMarie F. Eakins v. Austin Lloyd, Inc., Austin Coins, Inc., et al.*, Case No. 2:24-cv-00206 (E.D.N.Y.) (alleging similar fraud schemes and damages of over $580,000.00 to 77-year-old widow and stroke victim); *John H. Fikse v. Austin Lloyd, Inc. and Austin Coins, Inc., et al*., Case No. 2:24-cv-00220  (E.D.N.Y.) (alleging similar fraud schemes and damages of $328,550.00 to 90-year-old victim); *David R. Grindle v. Austin Coins, Inc., et al.*, Case No.

duty, resulting from offers to conduct an appraisal of Ms. Morris' numismatic and bullion coin inventory and then instead simply absconding with and converting her coins.

7.     Ms. Morris seeks to recover of and from the Defendants, jointly and severally, actual damages, consequential damages, exemplary damages, treble damages under 18 U.S.C. § 1964, statutory treble damages under New York General Business Law § 349, pre- and post-judgment interest, attorneys' fees, litigation expenses and costs of suit.

## PARTIES, JURISDICTION AND VENUE

### *The Parties*

8.     Plaintiff, **Mary L. Morris** is a citizen and resident of the State of Oregon.

9.     Defendant **Austin Lloyd, Inc.** ("Austin Lloyd") is a privately held corporation organized under the laws of the State of New York with its principal place of business located in Suffolk County, New York and a physical business address at 48 S. Service Road, Melville, NY 11747. Austin Lloyd received monies—and facilitated the receipt of monies—by its principals and agents, specifically, the Individual Defendants, as well as the "Aiding and Abetting" Defendants, that were

---

2:24-cv-01125 (E.D.N.Y.) (alleging similar fraud schemes and damages of $80,000.00 to 72-year-old Wisconsin farmer); *William Kevin Cleary v. Austin Lloyd, Inc., et al.*, Case No. 2:24-cv-01663 (E.D.N.Y.) (alleging similar fraud schemes and damages of $50,000.00 to 78-year-old victim); *Hans B. von Nolde v. Austin Coins, Inc., et al.*; Case No. 2:24-cv-06998 (E.D.N.Y.) (alleging similar fraud schemes and damages of $150,000.00 to 81-year-old victim); *Bernard Horn-Bostel v. Austin Coins, Inc., et al.*; Case No. 2:24-cv-07131 (E.D.N.Y.) (alleging similar fraud schemes and damages of $124,803.00 to 84-year-old victim); *James T. Tanner v. Austin Lloyd, Inc., et al.,* Case No. 2:24-cv-08219 (E.D.N.Y.) (alleging tripartite precious metals fraud scheme and damages of over $1.7 million to an 85-year-old Kentucky widower). *See also Larry Dale Withers v. Austin Lloyd, Inc., et al.*; and File No. 23-CVS-1024; In the General Court of Justice, Superior Court Division, Pender County, North Carolina (state court coin fraud case). Plaintiff's counsel is in the process of preparing complaints against these same Defendants on behalf of additional elderly telemarketing fraud victims. The foregoing demonstrates an ongoing, open-ended RICO pattern.

defrauded and stolen from Ms. Morris (as well as other elderly victims of the Austin Lloyd Enterprise).[5]

**10.** Defendant **Austin Coins, Inc.**[6] ("Austin Coins") is a privately held corporation organized under the laws of the State of New York with its principal place of business located in Suffolk County, New York and a physical business address at 48 S. Service Road, Melville, NY 11747. Austin Lloyd received monies—and facilitated the receipt of monies—by its principals and agents, specifically, the Individual Defendants, as well as the "Aiding and Abetting" Defendants, that were defrauded and stolen from Ms. Morris (as well as other elderly victims of the Austin Lloyd Enterprise).

**11.** Defendant **Patrick J. White** ("White") is a New York citizen and resident of Suffolk County, New York with a last known residential address at 3 Sweet Hollow Road, Huntington, NY 11743-6530 and a business address in Suffolk County at 48 S. Service Road, Melville, NY 11747. On information and belief, White is a principal/officer of and controlled Austin Lloyd and Austin Coins, who, together with the other defendants herein, participated in the conduct of the affairs of the Austin Lloyd Enterprise, and who, together with the other defendants herein, conspired to enrich himself, to fund his own business activities, and to fund the business activities of the Austin Lloyd Enterprise with money defrauded and stolen from Ms. Morris (as well as other elderly victims of the Austin Lloyd Enterprise) through a pattern of racketeering activity.

---

[5] Because Defendant Austin Lloyd, Inc. is the RICO enterprise, Plaintiff is not asserting claims against it as a RICO person. However, Plaintiff is asserting certain New York state law claims against Austin Lloyd, Inc. as detailed *infra*.

[6] Austin Coins, Inc. is a sister entity to or de facto successor-in-interest to Austin Lloyd, Inc. which was incorporated in New York on May 5, 2015. Both entities share the same office address and the same principals/officers. Austin Coins was incorporated in New York on June 9, 2020. Austin Coins also still actively markets itself and operates under the d/b/a "Austin Lloyd, Inc." Austin Coins, Inc. is a RICO person in this suit.

12.   Defendant **Eric P. Lesak** ("Lesak"), operating under the alias "Mike Todd,"[7] and known as "the Closer," is a New York citizen and resident of Nassau County, New York, with a last known residential address at 3494 Clifton Boulevard, Wantagh, NY 11793 and a business address in Suffolk County at 48 S. Service Road, Melville, NY 11747. On information and belief, Lesak (BOP Register Number 31319-018) is presently incarcerated at the Lewisburg FCI, 2400 Robert F. Miller Drive, Lewisburg, PA 17837 having been convicted of securities fraud. having been convicted of securities fraud. Lesak held himself out as an officer of Austin Lloyd and Austin Coins, as well as a telemarketing sales agent, "Senior Account Advisor," and "investment advisor" for the Corporate Defendants, who participated in the conduct of and controlled the affairs of the Austin Lloyd Enterprise, and who, together with the other defendants herein, conspired to enrich himself, to fund his own business activities (including those of Bullion Muscle Inc. ("Bullion Muscle")) and to fund the business activities of the Austin Lloyd Enterprise with money defrauded and stolen from Ms. Morris (as well as other elderly victims of the Austin Lloyd Enterprise) through a pattern of racketeering activity.

13.   Defendant **Michael "Mike" Caruso** ("Caruso") is a New York citizen and resident of Suffolk County, New York, with a last known business address in Suffolk County at 48 S. Service Road, Melville, NY 11747. Caruso was a telemarketing sales agent, "Senior Account Advisor," and "investment advisor" for the Corporate Defendants, Austin Lloyd and Austin Coins, who participated in the conduct of and controlled the affairs of the Austin Lloyd Enterprise, and who,

---

[7]   It is hardly surprising that a twice-convicted recidivist securities fraudster such as Lesak would use an alias. *See* https://www.sec.gov/files/litigation/complaints/2018/comp24239.pdf. Use of a fictitious name makes it difficult, if not impossible, for victims of coin fraudsters' schemes to identify, sue, or serve the actual, specific perpetrator. Further, there is precedent for RICO coin fraud telemarketers to use aliases when interacting with customers. *See United States v. Romano*, No. 09-CR-168 (SJ) (VMS), 2013 U.S. Dist. LEXIS 208446, at *20 n.6 (E.D.N.Y. 2013) (in criminal RICO coin fraud trial, "Michelle Stumpf testified . . . that the Defendants and their salespeople used false names when interacting with customers").

together with the other defendants herein, conspired to enrich himself, to fund his own business activities and to fund the business activities of the Austin Lloyd Enterprise with money defrauded and stolen from Ms. Morris (as well as other elderly victims of the Austin Lloyd Enterprise) through a pattern of racketeering activity.

14.  Defendant **Sean Klein** ("Klein") is a New York citizen and resident of New York County, New York with a last known residential address at 261 Hudson Street, Apt. 3F, NY, NY 10013 and a business address in Suffolk County at 48 S. Service Road, Melville, NY 11747. Klein held himself out as an officer of Austin Lloyd and Austin Coins, as well as a telemarketing sales agent and  "investment advisor" for the Corporate Defendants, who participated in the conduct of the affairs of the Austin Lloyd Enterprise, and who, together with the other defendants herein, conspired to enrich himself, to fund his own business activities, and to fund the business activities of the Austin Lloyd Enterprise with money defrauded and stolen from Ms. Morris (as well as other elderly victims of the Austin Lloyd Enterprise) and/or conspired to participate in the Austin Lloyd Enterprise's fraudulent affairs by agreement with White and the other defendants herein, or else knowingly supported, assisted, aided, and abetted the fraud committed against Ms. Morris (as well as other elderly victims of the Austin Lloyd Enterprise) by the members of the Austin Lloyd Enterprise, through a pattern of racketeering activity. In the alternative, this Defendant was unjustly enriched with funds defrauded from Ms. Morris (as well as other elderly victims of the Austin Lloyd Enterprise) by the Corporate Defendants, White, and the other Individual Defendants.

15.  Defendant **Brandon E. Chancey** ("Chancey") is a New York citizen and resident of Queens County, New York, with a last known residential address at 4545 Center Blvd., Apt. 18-12 Long Island City, NY 11109 and a business address in Suffolk County at 48 S. Service Road, Melville,

NY 11747. On information and belief, Chancey is or, at all times pertinent was, a telemarketing sales agent and "investment advisor" for the Corporate Defendants, who participated in the conduct of the affairs of the Austin Lloyd Enterprise, and who, together with the other defendants herein, conspired to enrich himself, to fund his own business activities, and to fund the business activities of the Austin Lloyd Enterprise with money defrauded and stolen from Ms. Morris (as well as other elderly victims of the Austin Lloyd Enterprise) and/or conspired to participate in the Austin Lloyd Enterprise's fraudulent affairs by agreement with White and the other defendants herein, or else knowingly supported, assisted, aided, and abetted the fraud committed against Ms. Morris (as well as other elderly victims of the Austin Lloyd Enterprise) by the members of the Austin Lloyd Enterprise, through a pattern of racketeering activity. In the alternative, this Defendant was unjustly enriched with funds defrauded from Ms. Morris (as well as other elderly victims of the Austin Lloyd Enterprise) by the Corporate Defendants, White, and the other Individual Defendants.

16. Defendant **John Doe, as Representative of the Estate of Christopher M. Paradise, Deceased**, ("Paradise"), is the as-yet-unappointed estate representative of the decedent, Christopher M. Paradise,[8] who passed away on January 26, 2024, was a New York citizen and resident of Suffolk County, New York, with a with a last known residential address at 12 Mallard Cove, Centerpoint, NY 11721-1641 and a business address in Suffolk County at 48 S. Service Road, Melville, NY 11747. On information and belief, Paradise was at all times pertinent a telemarketing sales agent and "investment advisor" for the Corporate Defendants, who participated

---

[8] Neither Paradise's surviving spouse nor anyone else has sought appointment as representative of the Paradise estate. On September 10, 2024, in the consolidated ALI cases (including *Earl Keith v. Austin Lloyd, Inc., et al*., 2:23-cv-09461), Plaintiff's counsel requested that Magistrate Judge Dunst issue an order under the All Writs Act, 28 U.S.C. § 1651, compelling the Town Clerk of Oyster Bay to issue a death certificate for Christopher Paradise to Plaintiffs' counsel so that Plaintiffs can institute an administration against Paradise's estate. Plaintiff's request was denied without prejudice.

in the conduct of the affairs of the Austin Lloyd Enterprise, and who, together with the other defendants herein, conspired to enrich himself, to fund his own business activities (including those of Christopher Paradise & Associates, Inc. ("CP&A")) and to fund the business activities of the Austin Lloyd Enterprise with money defrauded and stolen from Ms. Morris (as well as other elderly victims of the Austin Lloyd Enterprise) and/or conspired to participate in the Austin Lloyd Enterprise's fraudulent affairs by agreement with White and the other defendants herein, or else knowingly supported, assisted, aided, and abetted the fraud committed against Ms. Morris (as well as other elderly victims of the Austin Lloyd Enterprise) by other members of the Austin Lloyd Enterprise, through a pattern of racketeering activity. In the alternative, this Defendant was unjustly enriched with funds defrauded from Ms. Morris (as well as other elderly victims of the Austin Lloyd Enterprise) by the Corporate Defendants, White, and the other Individual Defendants.

**17.** Defendant **Charisma Perry** ("Perry") is a New York citizen and resident of Suffolk County, New York with a last known residential address at 3 Sweet Hollow Road, Huntington, NY 11743. On information and belief, Perry is White's girlfriend or "domestic partner," and she conspired to participate in the Austin Lloyd Enterprise's fraudulent affairs by agreement with White and the other defendants herein, or else she knowingly supported, assisted, aided and abetted the fraud committed against Ms. Morris (as well as other elderly victims of the Austin Lloyd Enterprise) by the members of the Austin Lloyd Enterprise, through a pattern of racketeering activity. In addition, or else in the alternative, Perry was a knowing and active participant in the laundering of the Austin Lloyd Enterprise's ill-gotten gains. In the alternative, Perry was unjustly enriched with funds defrauded from Ms. Morris (as well as other elderly victims of the Austin Lloyd Enterprise) by the Corporate Defendants, White, and the other Individual Defendants.

10

18.  Defendant **P. White Holdings, LLC** ("PWH") is a limited liability company organized under the laws of the State of New York with its principal place of business located in Suffolk County at 48 S. Service Road, Melville, NY 11747. On information and belief, PWH is a shell company and alter ego of its sole principal, Patrick J. White, who is a principal/officer of and controlled Austin Lloyd and Austin Coins, as well as the Austin Lloyd Enterprise. PWH received and was enriched by funds generated by the business activities of the Austin Lloyd Enterprise which funds were used to fund PWH's own business activities and to fund the business activities of the Austin Lloyd Enterprise with money defrauded from Ms. Morris (as well as other elderly victims of the Austin Lloyd Enterprise) and/or conspired to participate in the Austin Lloyd Enterprise's racketeering schemes by agreement with White and the other defendants herein, or else knowingly supported, assisted, aided, and abetted the fraud committed against Ms. Morris (as well as other elderly victims of the Austin Lloyd Enterprise) by the members of the Austin Lloyd Enterprise, through a pattern of racketeering activity. In addition, or else in the alternative, this Defendant was a knowing and active participant in the laundering of the Austin Lloyd Enterprise's ill-gotten gains. In the alternative, this Defendant was unjustly enriched with funds defrauded from Ms. Morris (as well as other elderly victims of the Austin Lloyd Enterprise) by the Corporate Defendants, White, and the other Individual Defendants.

19.  Defendant **P White Inc.** ("PWI") is a corporation organized under the laws of the State of New York with its principal place of business located in Suffolk County at 48 S. Service Road, Melville, NY 11747. On information and belief, PWI is a shell company and alter ego of its sole and managing member, Patrick J. White, who is a principal/officer of and controlled Austin Lloyd and Austin Coins, as well as the Austin Lloyd Enterprise. PWI received and was enriched by funds generated by the business activities of the Austin Lloyd Enterprise which funds were used to fund

PWI's own business activities and to fund the business activities of the Austin Lloyd Enterprise with money defrauded from Ms. Morris  (as well as other elderly victims of the Austin Lloyd Enterprise) and/or conspired to participate in the Austin Lloyd Enterprise's fraudulent affairs by agreement with White and the other defendants herein, or else knowingly supported, assisted, aided, and abetted the fraud committed against Ms. Morris (as well as other elderly victims of the Austin Lloyd Enterprise) by the members of the Austin Lloyd Enterprise, through a pattern of racketeering activity. In addition, or else in the alternative, this Defendant was a knowing and active participant in the laundering of the Austin Lloyd Enterprise's ill-gotten gains. In the alternative, this Defendant was unjustly enriched with funds defrauded from Ms. Morris (as well as other elderly victims of the Austin Lloyd Enterprise) by the Corporate Defendants, White, and the other Individual Defendants.

**20.** Defendant **New York Federal Gold, LLC** ("NYFG") is a limited liability company organized under the laws of the State of New York with its principal place of business located in Suffolk County at 48 S. Service Road, Melville, NY 11747. On information and belief, NYFG is a shell company and alter ego of its sole member and principal, Patrick J. White, who is a principal/officer of and controlled Austin Lloyd and Austin Coins, as well as the Austin Lloyd Enterprise. NYFG received and was enriched by funds generated by the business activities of the Austin Lloyd Enterprise which funds were used to fund NYFG's own business activities and to fund the business activities of the Austin Lloyd Enterprise with money defrauded from Ms. Morris (as well as other elderly victims of the Austin Lloyd Enterprise) and/or conspired to participate in the Austin Lloyd Enterprise's fraudulent affairs by agreement with White and the other defendants herein, or else knowingly supported, assisted, aided, and abetted the fraud committed against Ms. Morris (as well as other elderly victims of the Austin Lloyd Enterprise) by the members of the

12

Austin Lloyd Enterprise, through a pattern of racketeering activity. In addition, or else in the alternative, this Defendant was a knowing and active participant in the laundering of the Austin Lloyd Enterprise's ill-gotten gains. In the alternative, this Defendant was unjustly enriched with funds defrauded from Ms. Morris (as well as other elderly victims of the Austin Lloyd Enterprise) by the Corporate Defendants, White, and the other Individual Defendants.

21.  Defendant **Cash Money Bullion Corp.** ("CMBC") is a corporation organized under the laws of the State of New York with its principal place of business located in Suffolk County at 48 S. Service Road, Melville, NY 11747. On information and belief, CMBC is a shell company and alter ego of its sole principal, Patrick J. White, who is a principal/officer of and controlled Austin Lloyd and Austin Coins, as well as the Austin Lloyd Enterprise. CMBC received and was enriched by funds generated by the business activities of the Austin Lloyd Enterprise which funds were used to fund CMBC's own business activities and to fund the business activities of the Austin Lloyd Enterprise with money defrauded from Ms. Morris (as well as other elderly victims of the Austin Lloyd Enterprise) and/or conspired to participate in the Austin Lloyd Enterprise's fraudulent affairs by agreement with White and the other defendants herein, or else knowingly supported, assisted, aided, and abetted the fraud committed against Ms. Morris (as well as other elderly victims of the Austin Lloyd Enterprise) by the members of the Austin Lloyd Enterprise, through a pattern of racketeering activity. In addition, or else in the alternative, this Defendant was a knowing and active participant in the laundering of the Austin Lloyd Enterprise's ill-gotten gains. In the alternative, this Defendant was unjustly enriched with funds defrauded from Ms. Morris (as well as other elderly victims of the Austin Lloyd Enterprise) by the Corporate Defendants, White, and the other Individual Defendants.

22.   Defendant **Just John, LLC** ("Just John") is a limited liability company organized under the laws of the State of New York with its principal place of business located in Suffolk County at 48 S. Service Road, Melville, NY 11747. On information and belief, Just John is a shell company and alter ego of its sole member and principal, Patrick J. White, who is a principal/officer of and controlled Austin Lloyd and Austin Coins, as well as the Austin Lloyd Enterprise. Just John received and was enriched by funds generated by the business activities of the Austin Lloyd Enterprise which funds were used to fund Just John's own business activities and to fund the business activities of the Austin Lloyd Enterprise with money defrauded from Ms. Morris (as well as other elderly victims of the Austin Lloyd Enterprise) and/or conspired to participate in the Austin Lloyd Enterprise's fraudulent affairs by agreement with White and the other defendants herein, or else knowingly supported, assisted, aided, and abetted the fraud committed against Ms. Morris (as well as other elderly victims of the Austin Lloyd Enterprise) by the members of the Austin Lloyd Enterprise, through a pattern of racketeering activity. In addition, or else in the alternative, this Defendant was a knowing and active participant in the laundering of the Austin Lloyd Enterprise's ill-gotten gains. In the alternative, this Defendant was unjustly enriched with funds defrauded from Ms. Morris (as well as other elderly victims of the Austin Lloyd Enterprise) by the Corporate Defendants, White, and the other Individual Defendants.

23.   Defendant **CNP13, Inc.** ("CNP13") is a corporation organized under the laws of the State of New York with its principal place of business located in Suffolk County at 48 S. Service Road, Melville, NY 11747. On information and belief, CNP13 is a shell company and alter ego of its principals, Charisma Perry and/or Patrick J. White, who is a principal/officer of and controlled Austin Lloyd and Austin Coins, as well as the Austin Lloyd Enterprise. CNP13 received and was enriched by funds generated by the business activities of the Austin Lloyd Enterprise which funds

were used to fund CNP13's own business activities and to fund the business activities of the Austin Lloyd Enterprise with money defrauded from Ms. Morris, and others, and/or conspired to participate in the Austin Lloyd  Enterprise's fraudulent affairs by agreement with White and the other defendants herein, or else knowingly supported, assisted, aided, and abetted the fraud committed against Ms. Morris, and others, by the members of the Austin Lloyd Enterprise, through a pattern of racketeering activity. In addition, or else in the alternative, this Defendant was a knowing and active participant in the laundering of the Austin Lloyd Enterprise's ill-gotten gains. In the alternative, this Defendant was unjustly enriched with funds defrauded from Ms. Morris (as well as other elderly victims of the Austin Lloyd Enterprise) by the Corporate Defendants, White, and the other Individual Defendants.

24.    Defendant **Bullion Muscle Inc.** ("Bullion Muscle") is a corporation organized under the laws of the State of New York with its principal place of business located in Suffolk County at 3494 Clifton Boulevard, Wantagh, NY 11793. On information and belief, Bullion Muscle is a shell company and alter ego of its sole principal, Erik P. Lesak (a/k/a "Mike Todd"), who is, or held himself out to be, an officer of Austin Lloyd and Austin Coins. Bullion Muscle received and was enriched by funds generated by the business activities of the Austin Lloyd Enterprise which funds were used to fund Bullion Muscle's own business activities and to fund the business activities of the Austin Lloyd Enterprise with money defrauded and stolen from Ms. Morris, and others, and/or conspired to participate in the Austin Lloyd Enterprise's fraudulent affairs by agreement with White and the other defendants herein, or else knowingly supported, assisted, aided, and abetted the fraud committed against Ms. Morris, and others, by the members of the Austin Lloyd Enterprise, through a pattern of racketeering activity. In addition, or else in the alternative, this Defendant was a knowing and active participant in the laundering of the Austin Lloyd Enterprise's

15

ill-gotten gains. In the alternative, this Defendant was unjustly enriched with funds defrauded from Ms. Morris (as well as other elderly victims of the Austin Lloyd Enterprise) by the Corporate Defendants, White, and the other Individual Defendants.

25.   Defendant **BKGS Holdings, Inc.** ("BKGS") is a corporation organized under the laws of the State of New York with its principal place of business located in Suffolk County at 49 Franklin St., Northport, NY 11768-3058. On information and belief, BKGS is a shell company and alter ego of its sole principal, Brandon E. Chancey, who is, or held himself out to be, an officer of Austin Lloyd and Austin Coins. BKGS received and was enriched by funds generated by the business activities of the Austin Lloyd Enterprise which funds were used to fund BKGS's own business activities and to fund the business activities of the Austin Lloyd Enterprise with money defrauded and stolen from Ms. Morris, and others, and/or conspired to participate in the Austin Lloyd Enterprise's fraudulent affairs by agreement with White and the other defendants herein, or else knowingly supported, assisted, aided and abetted the fraud committed against Ms. Morris, and others, by the members of the Austin Lloyd Enterprise, through a pattern of racketeering activity. In addition, or else in the alternative, this Defendant was a knowing and active participant in the laundering of the Austin Lloyd Enterprise's ill-gotten gains. In the alternative, this Defendant was unjustly enriched with funds defrauded from Ms. Morris (as well as other elderly victims of the Austin Lloyd Enterprise) by the Corporate Defendants, White, and the other Individual Defendants.

26.   Defendant **Christopher Paradise & Associates, Inc.** ("CP&A") is a corporation organized under the laws of the State of New York with its principal place of business located in Suffolk County at 3 Sweet Hollow Road, Huntington, NY 11743. On information and belief, CP&A is a shell company and alter ego of its sole principal, Christopher M. Paradise, deceased, who held

himself out to be, an officer of and a telemarketing sales agent and "investment advisor" for the Corporate Defendants. CP&A received and was enriched by funds generated by the business activities of the Austin Lloyd Enterprise which funds were used to fund CP&A's own business activities and to fund the business activities of the Austin Lloyd Enterprise with money defrauded and stolen from Ms. Morris, and others, and/or conspired to participate in the Austin Lloyd Enterprise's fraudulent affairs by agreement with White and the other defendants herein, or else knowingly supported, assisted, aided, and abetted the fraud committed against Ms. Morris, and others, by the members of the Austin Lloyd Enterprise, through a pattern of racketeering activity. In addition, or else in the alternative, this Defendant was a knowing and active participant in the laundering of the Austin Lloyd Enterprise's ill-gotten gains. In the alternative, this Defendant was unjustly enriched with funds defrauded from Ms. Morris (as well as other elderly victims of the Austin Lloyd Enterprise) by the Corporate Defendants, White, and the other Individual Defendants.

### *Jurisdiction and Venue*

**27.**  This Court has federal question jurisdiction over this case pursuant to 28 U.S.C. § 1331 and 18 U.S.C. §1964(c), RICO's civil damages provision. In addition, the Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 because, and insofar as, they are so related to the federal claims that they form part of the same case or controversy and arise from the same nucleus of operative facts.

**28.**  In addition, or else in the alternative, this Court has diversity jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332(a), as Plaintiff is a citizen of Oregon, and Defendants all are citizens of states other than Oregon, and the amount in controversy exceeds $75,000 exclusive of interest, costs, and attorneys' fees.

**29.** This Court has *in personam* jurisdiction over all Defendants because at all relevant times Defendants conducted their business and fraudulent activities from their offices in this District. Further, all Defendants resided, maintained citizenship, were found, had agents, and are amenable to service in this District.

**30.** Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2).

**INTRODUCTION TO THE COIN *FRAUD* INDUSTRY
AND THE AUSTIN LLOYD RACKETEERING ENTERPRISE**

### A.    Primer: the Coin *Fraud* Industry

**31.** While no one disputes that there are upstanding, reputable precious metals dealers, a criminal subset (the "coin *fraud* industry") operating in the penumbra of those reputable dealers has been a longstanding problem. In late 1983 and early 1984, federal and state authorities initiated a long-awaited crackdown on precious metals dealers operating fraudulent "boiler room" schemes across the country. These precious metals fraudsters and racketeers had bilked investors out of several hundred million dollars.[9] Banking on customers' lack of knowledge, and using the nuances of coin collecting, grading, historical factors, and mint populations, unethical coin dealers continue to confuse and confound the average consumer with lies and deceptive claims of significant investment returns and bargains, often rising to the level of, and culminating in, outright fraud and counterfeiting. The United States Senate and various Federal and State agencies and commissions have investigated, and continue to investigate, the criminal underbelly of the precious metals industry.

---

[9]  *See Commodity Investment Fraud II, Hearings Before the Permanent Subcommittee on Investigations of the Senate Committee on Governmental Affairs,* 98th Cong., 2d Sess. 145-88 (1984)*; see also War on Florida Boiler Rooms,* N.Y. Times, Nov. 14, 1983; *Regulating Bullion Dealers,* N.Y. Times, Oct. 31, 1983; *Senate to Study Gold Dealers,* N.Y. Times, Oct. 27, 1983; *Bullion Fraud: Who Protects the Investor?,* Chicago Tribune, Oct. 25, 1983.

**B.    The Coin Fraudsters Prey Upon the Elderly.**

**32.**   A decade ago, a United States Senate Special Committee on Aging conservatively estimated that more than "*10,000 Americans have been victimized through these schemes, with losses around $300 million.*"[10] The U.S. Senate Report further revealed that the "*overwhelming number of victims in precious metal fraud are seniors.*"[11] Likewise, the FBI has found that corrupt coin dealers intentionally target the elderly specifically "*because they [are] elderly and [the dealers] thought [they] could get away with it*" and that, while the amounts defrauded as to any individual elderly customer may seem small in comparison to certain other more high profile financial frauds, "*it represents a great deal to the victims – it was one man's life savings.*"[12] In fact, most of the fraud advisories and enforcement actions by the Federal and State agencies focus on the financial exploitation of the elderly at the hands of fraudulent coin dealers.[13]

**33.**   More recently, the New York Attorney General published a consumer alert specifically warning against "**Coin Swindles**" in which she warns that: "*[s]o called 'rare coins' are often sold to unwary investors who are led to believe that they are a good investment that will increase in value over the years. Representations made about the expected increase in the value of these coins are almost always untrue and part of a scam perpetrated against unsophisticated, often elderly*

---

[10]  *See  Exploring the Perils of the Precious Metals Market*, U.S. Senate Special Committee on Aging, *https://www.aging.senate.gov/download/precious-metals-market-committee-staff-investigation*, at 17 (hereinafter "US Senate Report"*)*.

[11]  *See* US Senate Report at 16.

[12]  *See Fraudster Targeted Elderly Victims*" https://www.fbi.gov/news/stories/the-case-of-the-corrupt-coin-dealer.

[13]  *See, e.g.,* https://dfpi.ca.gov/2022/02/01/dfpi-sues-to-stop-68-million-precious-metals-and-coin-fraud-targeting-elderly/.

*victims*."[14] In fact, most of the fraud advisories and enforcement actions by Federal and State agencies focus on the financial exploitation of the elderly at the hands of fraudulent coin dealers.[15]

### C. **The Austin Lloyd Enterprise**

**34.**    The person at the apex of the Austin Lloyd Enterprise and the mastermind of its scheme targeting elderly precious metals telemarketing customers is the principal of both Austin Lloyd and Austin Coins, Patrick J. White ("White"). On information and belief, White is a former securities broker who has been permanently barred from working in the securities industry by FINRA,[16] as has his number one telemarketing sales agent, "Senior Account Advisor," "investment" advisor, rogue securities broker, and current involuntary guest of the Federal Bureau of Prisons, Eric P. Lesak (alias "Mike Todd") ("Lesak") who is also a member, and the maleficent driving force, of the Austin Lloyd Enterprise.

**35.**    White and the Austin Lloyd/Austin Coins telemarketing minions (Lesak and Caruso), as well as the Conspiracy Defendants (Klein, Chancey, and Paradise), all of whom had a meeting of the minds to scam, defraud, and launder money illegally obtained from elderly customers, with the knowing support of the "Aiding and Abetting" Defendants (CNP13, Lesak's company, Bullion Muscle, Chancey's company, BKGS, Paradise's company, CP&A, and all of White's various shell

---

[14]  *See* https://ag.ny.gov/common-investment-scams. Other state attorneys general have also issued precious metals fraud consumer alerts. *See, e.g.,* https://www.texasattorneygeneral.gov/consumer-protection/investing-gold-coins (Texas), https://www.ag.state.mn.us/consumer/publications/-CoinDealers.asp  (Minnesota), and https://www.myfloridalegal.com/consumer-protection/how-to-protect-yourself-rare-coin-investment-schemes (Florida).

[15]  *See, e.g.,* https://dfpi.ca.gov/2022/02/01/dfpi-sues-to-stop-68-million-precious-metals-and-coin-fraud-targeting-elderly/.

[16]  "FINRA" is the Financial Industry Regulatory Authority, a private American corporation that acts as a self-regulatory organization for its member brokerage firms and exchange markets. https://www.finra.org/#/.

companies[17]), controlled, participated in, and/or advanced the criminal operations of the Austin Lloyd Enterprise and cultivated the Austin Lloyd Enterprise into the textbook example of the most egregious serial abusers of elderly coin customers in the entire coin fraud industry to date.

### FACTS COMMON TO ALL OF MS. MORRIS'S CLAIMS

**36.** Plaintiff Mary L. Morris is an 85-year-old retiree who had the misfortune to cross paths with the members of the Austin Lloyd Enterprise and get snared in the patented Austin Lloyd "Fraud Scam Three"[18]—the fake appraisal scam engineered by Lesak and Caruso, by way of which they stole her entire coin collection, as described in detail below.

**37.** On information and belief, Austin Coins' sole or primary principal is Individual Defendant, Patrick J. White. In addition, Lesak (under the alias "Mike Todd") and Caruso had most or all of the telephonic interactions with Ms. Morris. At all times pertinent, Lesak was a telemarketing representative and "Senior Account Advisor" for Austin Lloyd and Austin Coins. Lesak also is known to have held himself out to different customers as an "owner," "Senior Investment Advisor," and "Executive Director of Purchasing, and Senior Partner" for Austin Lloyd and Austin Coins.[19] Caruso likewise represented his title as "Senior Account Advisor."

**38.** Ms. Morris has collected precious metal coins for a number years. Most of her collection consisted of commemorative silver bullion coins and "certified modern bullion" coins, although

---

[17] Specifically, PWH, PWI, NYFG, CMBC, and Just John.

[18] A survey of the claims asserted by the victims identified in footnote 4, *supra*, reveals that the Austin Lloyd/Austin Coins telemarketers' "playbook" consists of three (3) fundamental scams: (1) unrelenting high-pressure telemarketing phone calls with fraudulent, unconscionably overpriced sales of coins as "investments"; (2) credit card and e-check fraud; and (3) fake appraisal/buy-back coin theft and conversion. Ms. Morris primarily was a victim of the third scam variation.

[19] On information and belief, all Austin Lloyd/Austin Coins telemarketers utilize standardized sales "scripts" composed and developed by White and Lesak to lure and convince their customers to purchase grossly overpriced coins and/or to ship their coins to Austin Lloyd and Austin Coins in New York for "appraisal" where the coins are then converted and resold to other unsuspecting elderly customers—"lather, rinse, repeat."

she also had some numismatic silver and gold coins and gold bullion coins in her collection. *See* Table 1, below.

**39.** Ms. Morris' first interaction with the Austin Lloyd Enterprise was when she was "cold-called" by Caruso on or about May 6, 2020 and purchased some coins for $2,900 from Austin Lloyd.

**40.** Caruso kept calling Ms. Morris and convinced her to make additional coin purchases on or about: August 28, 2020 ($1,700), November 12, 2020 ($7,600)[20], January 8, 2021 ($7,500), and March 8, 2022 ($8,000). All told, Ms. Morris spent $27,700 on coins from Austin Lloyd.

**41.** Ms. Morris bought no more coins from Austin Lloyd, but Caruso did not stop telephoning her. Ultimately, in November 2022, Caruso called Ms. Morris and offered to appraise her coin collection. He told her that if she was satisfied with the appraisal, Austin Lloyd would be willing to buy the coins from her or else broker the sales of the coins for a commission. Ms. Morris was curious as to the value of the coin collection she had started at least ten (10) years prior, and she orally agreed to allow Austin Lloyd to do the appraisal. Caruso sent Ms. Morris an "Authorization to Appraise Coins" agreement. *See* **Exhibit A** (a true and correct copy of the executed agreement).

**42.** The authorization, signed by "Mike Caruso, Senior Account Advisor at Austin Lloyd, Inc." on November 21, 2022 and by Ms. Morris on November 28, 2022 provided as follows, in pertinent part:

> This letter is to give permission for Austin Lloyd Inc. to take possession of Mary Morris's coins, ***strictly for appraisal purposes***. Mary Morris will be receiving a FedEx package from Austin Lloyd Inc. . . . Once Austin Lloyd Inc. receives the appraisal agreement Mike Caruso, Senior Account Advisor at Austin Lloyd Inc., will get an appraisal quote for Mary Morris's coins. From there, a new trade agreement will be drafted with the agreed upon terms by Austin Lloyd Inc. and Mary Morris. . . (emphasis added).

---

[20] Ms. Morris returned the 1995 $10 Gold Eagle MS70 bullion coin November 12, 2020 she purchased on November 12, 2020 to Austin Lloyd with the handwritten note on her copy of Invoice # 1436: "Not as represented—am returning by Fed X 11-18-20—Thank You." Defendants never refunded Plaintiff's purchase price.

**43.** Ms. Morris packed her coin collection (including the coins she had purchased from Austin Lloyd between 2020 and 2022 for over $20,000) in the provided FedEx boxes and shipped it to Austin Lloyd for the agreed-upon appraisal. However, months passed, and she never received the promised appraisal from Caruso or Austin Lloyd nor any explanation from Caruso.

**44.** Rather, employing a standard Austin Lloyd gambit seen in other victim's cases, by which Defendants attempt to set up a defense to a conversion claim that the customer accepted coins in "trade" for her coin collection, on March 16, 2023, Caruso shipped Ms. Morris ten (10) "2016 Ana Cabral 30th Anniversary American Silver Eagle NGC MS70 3-Coin Set[s]." *See* ==Exhibit== **B** (a true and correct copy of Austin Coins Invoice # 12845).[21] The Invoice unilaterally and incorrectly describes the "Terms" as "PAID IN FULL" and includes in the "Description" the phrase: "AS PER TRADE." *Id.* However, Ms. Morris did not agree to "trade" the coin collection she shipped to Austin Lloyd for appraisal for "30 pieces of silver" from Austin Coins. Instead, she called and informed Caruso that she did not agree and that she would return the ten (10) "Signature Series" Anna Cabral 30th Anniversary Sets upon return of her coin collection.

**45.** Subsequently, on or about March 23, 2023, Lesak (operating as "Mike Todd, Senior Account Advisor") forwarded Ms. Morris another "Authorization to Appraise Coins," this time on behalf of Austin Coins, Inc. *See* ==Exhibit== **C**. Like the earlier appraisal authorization document (==**Exhibit A**==), this second authorization form was expressly limited in scope, purporting to "give permission for Austin Coins, Inc. to take possession of MARY MORRIS's collectibles, ***strictly for appraisal***

---

[21]  Caruso unilaterally shipped Ms. Morris thirty (30) "certified modern" "Signature Series" bullion American Silver Eagle coins (10 sets of 3 coins each) with the signature of former Bush administration Treasury Secretary, Anna Cabral. "Certified modern" "Signature Series" bullion is nothing more than a marketing gimmick. While the invoice claimed the signed Anna Cabral coins were worth $4,500.00 ***each***, in reality the ***total*** fair market value of all thirty (30) Anna Cabral coins as of March 2023 was at most $2,250.00.

*purposes*." *See* <mark>Exhibit</mark> **C** (emphasis added). Ms. Morris did not sign and return the second appraisal authorization.

**46.**   Nonetheless, Lesak finally did send Ms. Morris a list of her coins; however, it included only a portion of the coins she had previously shipped to Austin Lloyd and did not correlate to the list she made when she boxed the coins for shipment. More importantly, neither Lesak nor Caruso ever provided Ms. Morris any appraisal/valuation of her coin collection.

**47.**   The delays, incomplete inventory, and lack of any appraisal led Ms. Morris to begin calling Caruso and Lesak to try to determine what Austin Lloyd and/or Austin Coins had done with her coins. When she managed to get Caruso or Lesak to take her calls, they would give her the runaround, make up phony excuses for the delay, try to "gas-light" her, and/or make assurances that the appraisal was forthcoming. Soon it was obvious that she would get no satisfaction, so Ms. Morris demanded that Austin Lloyd/Austin Coins return the coin collection to her. At this point, Caruso and Lesak stopped taking her calls, and all communications ceased.

**48.**   The upshot of Ms. Morris's interactions with Caruso and Lesak, as agents and representatives of Austin Lloyd and Austin Coins is that through misrepresentations and outright lies, they convinced Ms. Morris to ship her entire coin collection to Austin Lloyd solely for purposes of appraisal, and then once they had possession of the collection, they first tried to trick her into accepting other coins worth a fraction of the value of her coin collection in a "one-for-one" trade. When that ploy did not pan out, Caruso and Lesak simply ignored her complaints and demands that they return the coin collection and absconded with and converted the collection for their own enrichment and in furtherance of the Austin Lloyd Enterprise.

**49.**  **Table 1** imbedded immediately below is the inventory of coins that Ms. Morris shipped to Austin Lloyd for appraisal.

**\*TABLE 1—Plaintiff's Coins Converted and Stolen by the Austin Lloyd Enterprise**

| Date | DESCRIPTION | # coins | Fair Market Value 3/6/23 |
|------|-------------|---------|--------------------------|
| 3/6/2023 | 1987 Silver American Eagle PF70 NGC Mercanti | 4 | $ 500.00 |
| 3/6/2023 | 1583-1598 Silk Road Quarter Mithqal EF45 Gold | 1 | $ 65.00 |
| 3/6/2023 | 1583-1598 Silk Road Quarter Mithqal EF45 Gold | 1 | $ 65.00 |
| 3/6/2023 | 1583-1598 Silk Road Quarter Mithqal EF45 Gold | 1 | $ 65.00 |
| 3/6/2023 | 1648 SILVER LION DOLLAR NETHERLAND NGC BU | 1 | $ 65.00 |
| 3/6/2023 | 1880 S $1 Morgan Silver Dollar USRC Rocky Mountain Hoard MS64 | 1 | $ 125.00 |
| 3/6/2023 | 1881 S Morgan MS66 PCGS Gem Uncirculated | 1 | $ 400.00 |
| 3/6/2023 | 1885-O Morgan Silver Dollar NGC MS67 Bressett | 1 | $ 1,062.00 |
| 3/6/2023 | 1887 "P" USRC Morgan Dollar MS66 | 1 | $ 400.00 |
| 3/6/2023 | 1891-CC Morgan Silver Dollar | 1 | $ 125.00 |
| 3/6/2023 | 1899-0 Morgan Silver Dollar MS64 NGC | 1 | $ 125.00 |
| 3/6/2023 | 1904-O Morgan Silver Dollar MS64 NGC | 1 | $ 125.00 |
| 3/6/2023 | 1921 Morgan Silver Dollar BU | 1 | $ 45.00 |
| 3/6/2023 | 1921 Morgan/1922 Peace Dollar set MS63 Bressett | 2 | $ 150.00 |
| 3/6/2023 | 1964 Kennedy Half Dollar Accented | 1 | $ 10.00 |
| 3/6/2023 | 1964-2014 P/D Kennedy Half Dollar Series | 50 | $ 250.00 |
| 3/6/2023 | 1986 Silver American Eagle FYOI NGC MS69 Standish | 1 | $ 27.37 |
| 3/6/2023 | 1986-S Silver American Eagle PF70 | 1 | $ 372.00 |
| 3/6/2023 | 1986-S Silver American Eagle PF70 | 1 | $ 372.00 |
| 3/6/2023 | 1987-S $1 Silver American Eagle MS70 NGC John Mercanti | 1 | $ 650.00 |
| 3/6/2023 | 1987-S $1 Silver American Eagle MS70 | 7 | $ 1,225.00 |
| 3/6/2023 | 1994 Vietnam Veterans Memorial Silver Dollar | 3 | $ 105.00 |
| 3/6/2023 | 1995/1996-W $ 5 GAE Flag Cauldron Stadium Torch MS70 | 2 | $ 480.00 |
| 3/6/2023 | 1999 Silver American Eagle Set MS70/PR70 | 2 | $ 200.00 |
| 3/6/2023 | 2003-W $5 Gold AE PF69 | 2 | $ 1,200.00 |
| 3/6/2023 | 2006-2016 9pc Burnished Silver American Eagle | 9 | $ 360.00 |
| 3/6/2023 | 2008 Silver American Eagle MS69 pcgs | 1 | $ 27.37 |
| 3/6/2023 | 2008-2020 Silver American Eagle Set PCGS MS70 Whitley | 13 | $ 1,118.65 |
| 3/6/2023 | 2010 5 oz. ATB "Mount Hood" NGC | 1 | $ 136.83 |
| 3/6/2023 | 2013 Canada Maple Leaf /Holiday SP70 F.R. 488 Ltd | 1 | $ 55.00 |
| 3/6/2023 | 2013 Canada Niagara Falls SP70 SP70 F.R. 488 Ltd | 1 | $ 55.00 |
| 3/6/2023 | 2013 Canada Orca SP70 F.R. 488 | 1 | $ 55.00 |
| 3/6/2023 | 2013 Canada Summer Fun and Wolf SP70 F.R. 488 Ltd | 1 | $ 55.00 |
| 3/6/2023 | 2013 Canadian Caribou  SP70  F.R. Ltd 488 | 1 | $ 55.00 |
| 3/6/2023 | 2013 Canadian Hockey SP70 F.R. Ltd 488  . . . | 1 | $ 55.00 |
| 3/6/2023 | 2013 Canadian Inukshuk/Beaver SP70 F.R. 488 Ltd | 1 | $ 55.00 |
| 3/6/2023 | 2013 Canadian half ounce ANACS MS70 | 6 | $ 150.00 |
| 3/6/2023 | 2013 O Canada 4-pc Set SP70 | 4 | $ 800.00 |
| 3/6/2023 | 2013 S Silver American Eagle NGC Bridge Label MS70 | 1 | $ 75.00 |
| 3/6/2023 | 2013 Silver American Eagle 3-pc Set MS70  Ltd 380 | 1 | $ 225.00 |
| 3/6/2023 | 2013 Silver American Eagle MS70 FR Ltd 942 | 1 | $ 75.00 |

| Date | Description | Qty | | Value |
|------|-------------|-----|--|-------|
| 3/6/2023 | 2013 Silver Mapleleaf  F.R. 25th Anniversary | 1 | $ | 40.00 |
| 3/6/2023 | 2013 Silver National Treasures 3-pc Set | 6 | $ | 240.00 |
| 3/6/2023 | 2013-S Silver American Eagle NGC MS69 | 1 | $ | 27.37 |
| 3/6/2023 | 2013-W Silver American Eagle  F.R. 5-pc Set | 5 | $ | 125.00 |
| 3/6/2023 | 2013-W Silver American Eagle 2-pc set MS70 F.R. | 2 | $ | 110.00 |
| 3/6/2023 | 2014 $10 Canada Silver Maple Tree ANACS SP70 (F.R. Ltd. 189) | 1 | $ | 55.00 |
| 3/6/2023 | 2014  FIFA World Cup 10 Euro PR70 F.R.  Ltd 296 | 1 | $ | 55.00 |
| 3/6/2023 | 2014 $10 Canada Silver Bison ANACS SP70 (F.R. Ltd. 77) | 1 | $ | 40.00 |
| 3/6/2023 | 2014 $10 Canada Silver Goose ANACS SP70 (F.R. Ltd. 159) | 1 | $ | 40.00 |
| 3/6/2023 | 2014 $10 Canada Silver Grizzly ANACS SP70 (F.R. Ltd. 147) | 1 | $ | 40.00 |
| 3/6/2023 | 2014 $10 Canada Silver Igloo ANACS SP70 (F.R. Ltd. 39) | 1 | $ | 40.00 |
| 3/6/2023 | 2014 $10 Canada Silver Skiing ANACS SP70 (F.R. Ltd. 48) | 1 | $ | 40.00 |
| 3/6/2023 | 2014 $10 Silver Canada Holiday ANACS SP70 ( F.R. Ltd. 211) | 1 | $ | 40.00 |
| 3/6/2023 | 2014 $10 Silver Canada Northern Lights ANACS SP70 (F.R.) | 1 | $ | 40.00 |
| 3/6/2023 | 2014 $5 Gold Hall of Fame Signature Series  PGCS MS70 Gold | 1 | $ | 35.00 |
| 3/6/2023 | 2014 100th Anniversary Breakout F.R. | 1 | $ | 75.00 |
| 3/6/2023 | 2014 Aus. Silver Koala HR FS NGC-PF70 | 1 | $ | 35.00 |
| 3/6/2023 | 2014 Aus. Silver Wedge Tailed Eagle NGC-PF70 | 1 | $ | 35.00 |
| 3/6/2023 | 2014 F.R. $10 Canada Silver Moose ANACS SP70 (F.R.) | 1 | $ | 40.00 |
| 3/6/2023 | 2014 Hall of Fame Silver PF70 10 Coin Set, | 10 | $ | 350.00 |
| 3/6/2023 | 2014 JFK 4pc 50th Anniversary Silver Set PR70/SP70/MS70 F.R. | 4 | $ | 300.00 |
| 3/6/2023 | 2014 Kennedy "50th Ann" Gold NGC PR70 Gold | 1 | $ | 1,100.00 |
| 3/6/2023 | 2014 Kennedy 50th Anniv P/D Mint High Relief F.R.  SP69 | 2 | $ | 70.00 |
| 3/6/2023 | 2014 Silver American Eagles MS70 F.R.  Ltd 4,888 | 1 | $ | 75.00 |
| 3/6/2023 | 2014 Silver Australia wedge tail ms70 | 1 | $ | 75.00 |
| 3/6/2023 | 2014 Silver Australian Saltwater Crocodile 1oz | 1 | $ | 40.00 |
| 3/6/2023 | 2014 Smithsonian Panda 1-oz Silver NGC PF70 Qty-10 | 10 | $ | 550.00 |
| 3/6/2023 | 2014-S Silver American Eagle MS70 F.R. Ltd 1779 | 1 | $ | 75.00 |
| 3/6/2023 | 2014-W $.50 Gold JFK | 1 | $ | 1,100.00 |
| 3/6/2023 | 2015 5-Coin Silver Maple Leaf Set Reverse Proof | 1 | $ | 4,560.61 |
| 3/6/2023 | 2015 $5 Gold American Eagle Narrow Reed Edge. . . | 1 | $ | 240.03 |
| 3/6/2023 | 2015 "Best Coins of The Year" 6 Coin Set | 6 | $ | 210.00 |
| 3/6/2023 | 2015 D JFK Silver Half Dollar UNC | 1 | $ | 40.00 |
| 3/6/2023 | 2015 F.R. JFK Coin & Chronicles Set RP69/MS69 Ltd. 294 | 2 | $ | 80.00 |
| 3/6/2023 | 2015 FR Silver American Eagle Set MS70/PR70 Ltd 969 Silver, | 2 | $ | 250.00 |
| 3/6/2023 | 2015 FR Silver maple Leaf MS70 Ltd 777 Silver, | 1 | $ | 50.00 |
| 3/6/2023 | 2015 P JFK Half Dollar UNC | 1 | $ | 40.00 |
| 3/6/2023 | 2015 P JFK Presidential Dollar Roll | 20 | $ | 30.00 |
| 3/6/2023 | 2015 Smithsonian BAO BAO 1-oz Silver PF70 | 6 | $ | 240.00 |
| 3/6/2023 | 2016 Silver American Eagle PR70 (F.R. Ltd. 778) | 1 | $ | 75.00 |
| 3/6/2023 | 2016 (2020) Silver American Eagle WP Hoard PCGS PR70 Balan | 1 | $ | 75.00 |
| 3/6/2023 | 2016 "Best Coins of The Year" 6 Coin Set | 6 | $ | 210.00 |
| 3/6/2023 | 2016 "W" 3pc SAE Set NGC "Reagan" MS70/PR70/Burnished MS70 | 3 | $ | 225.00 |
| 3/6/2023 | 2016-W SAE "30th Ann Lettered Edge" F.S. Moy PR70 DCAM | 1 | $ | 75.00 |

26

| 3/6/2023 | 2016 30 Gram Silver Panda NGC MS70 | 1 | $ | 50.00 |
|---|---|---|---|---|
| 3/6/2023 | 2016 3pc SAE 30th Anniversary MS70/PR70/SP70 F.R. Ltd 269 | 3 | $ | 225.00 |
| 3/6/2023 | 2016 American Silver American Eagles MS70 PCGS | 1 | $ | 75.00 |
| 3/6/2023 | 2016 China Silver Panda MS70 FS | 1 | $ | 50.00 |
| 3/6/2023 | 2016 China Silver Panda MS70 NGC 1st Release | 4 | $ | 200.00 |
| 3/6/2023 | 2016 Five World Class Coins | 5 | $ | 150.00 |
| 3/6/2023 | 2016 Silver American Eagle | 1 | $ | 25.00 |
| 3/6/2023 | 2016 Silver American Eagle "30th Ann" MS70 | 1 | $ | 75.00 |
| 3/6/2023 | 2016 Silver American Eagle Flag Label PCGS MS70 | 1 | $ | 75.00 |
| 3/6/2023 | 2016 3 pc Silver Set (Couger Pred, Aust Kangaroo, China Panda) | 3 | $ | 120.00 |
| 3/6/2023 | 2016-W Burnished Silver American Eagle SP70 F.R. Ltd. 779 | 1 | $ | 95.00 |
| 3/6/2023 | 2017 F.R. Silver American Eagle ANACS | 1 | $ | 25.00 |
| 3/6/2023 | 2017 F.R. Silver American Eagle Proof Set PR70 Ltd.350 | 1 | $ | 125.00 |
| 3/6/2023 | 2017 F.R. Silver Maple Leaf F.R.  Reverse Proof RP70 Limited 1461 | 1 | $ | 75.00 |
| 3/6/2023 | 2017 Lion Dollar NGC "1 of 2000 Struck" MS70 DPL | 1 | $ | 95.00 |
| 3/6/2023 | 2017 5-pc Silver Collection Britannia/Eagle/Maple Leaf/Panda/Kangaroo | 5 | $ | 175.00 |
| 3/6/2023 | 2017 Netherlands Silver Lion Dollar Restrike NGC PF70UC | 1 | $ | 75.00 |
| 3/6/2023 | 2017 Silver American Eagle MS70 Moy/FS/225th Ann | 1 | $ | 75.00 |
| 3/6/2023 | 2017 Silver American Eagle PF70 NGC | 1 | $ | 125.00 |
| 3/6/2023 | 2017 Silver Maple W150 Logo Reverse Proof UNC Silver, | 1 | $ | 50.00 |
| 3/6/2023 | 2017 W (2020) SAE WP Hoard PCGS PR70 Balan (pop. 700) | 1 | $ | 125.00 |
| 3/6/2023 | 2017 W 3pc 225th Ann SAE DC/Den/Phila PCGS PR70 DCAM FDOI Moy | 3 | $ | 225.00 |
| 3/6/2023 | 2017 W 3-pc 225th Anniv Burnished SAE PCGS SP70 FI Moy | 3 | $ | 225.00 |
| 3/6/2023 | 2017-P Silver American Eagle MS69  "Mystery Mint" | 3 | $ | 75.00 |
| 3/6/2023 | 2017-W Silver American Eagle MS69 | 1 | $ | 25.00 |
| 3/6/2023 | 2018 $1 Silver American Eagle FDOI "Reagan Legacy Series" MS70 | 2 | $ | 150.00 |
| 3/6/2023 | 2018 $5 Gold American Eagle FDOI "Reagan Legacy Series" MS70 | 1 | $ | 240.03 |
| 3/6/2023 | 2018 8 pc Silver Proof Set NGC Castleman | 8 | $ | 1,000.00 |
| 3/6/2023 | 2018 China Panda F.R. MS70 Ltd 477 Silver | 2 | $ | 150.00 |
| 3/6/2023 | 2018 $5 Canadian Maple Leaf ANACS F.R. Incuse MS70 (Ltd. 300) | 1 | $ | 240.03 |
| 3/6/2023 | 2018 F.R. Incuse 30th Anniversary Map. . . | 1 | $ | 240.03 |
| 3/6/2023 | 2018 F.R. Silver American Eagle PR70 (Ltd. 200) | 1 | $ | 125.00 |
| 3/6/2023 | 2018 S 3-pc SAE PR70 FDI w/Edmund C. Moy | 3 | $ | 225.00 |
| 3/6/2023 | 2018 S Africa Silver Krugerrand NGC. | 1 | $ | 25.00 |
| 3/6/2023 | 2018 Silver American Eagle NGC MS70 FDI | 1 | $ | 75.00 |
| 3/6/2023 | 2018 Silver Krugerrand NGC MS69 ER. . . | 1 | $ | 25.00 |
| 3/6/2023 | 2018 Silver Krugerrand MS70  FDOI | 1 | $ | 50.00 |
| 3/6/2023 | 2018 Silver Maple Leaf 3-pc Set UNC | 3 | $ | 75.00 |
| 3/6/2023 | 2018 Silver Panda Early Issue MS70 | 2 | $ | 80.00 |
| 3/6/2023 | 2018 Silver Panda PCGS 1st Strike/35th Anniv MS70 | 1 | $ | 40.00 |
| 3/6/2023 | 2018 Silver Panda UNC | 1 | $ | 30.00 |
| 3/6/2023 | 2018 W 3-pc SAE PCGS PR70 FDI Moy | 3 | $ | 300.00 |
| 3/6/2023 | 2018 W 3pc SAE  PCGS SP70 FCI Moy | 3 | $ | 300.00 |
| 3/6/2023 | 2018 World Class Coins 5-pc. Silver C. . . | 5 | $ | 150.00 |

| 3/6/2023 | 2018-S Silver Kurgerrand MS69 NGC | 1 | $ | 25.00 |
|---|---|---|---|---|
| 3/6/2023 | 2019 25C American Memorial PCGS MS65 | 1 | $ | 35.00 |
| 3/6/2023 | 2019 5 pc World Class Coins Set 2019 | 5 | $ | 175.00 |
| 3/6/2023 | 2019 5 pc World Coins Set Silver American Eagle/Britannia/Kangaroo | 5 | $ | 175.00 |
| 3/6/2023 | 2019 F.R. $1 Australian Wedge-Tailed Eagle MS70 (Ltd. 250) | 1 | $ | 75.00 |
| 3/6/2023 | 2019 F.R. W Lincoln Penny PR70 W 10 pc Proof Set OGP (Ltd. 250) | 10 | $ | 50.00 |
| 3/6/2023 | 2019 F.R. W Lincoln Penny SP70 Ltd. 225 W/R&D Mint Set | 1 | $ | 15.00 |
| 3/6/2023 | 2019 FR $5 Gold MS70 Ltd 500 | 1 | $ | 240.00 |
| 3/6/2023 | 2019 FR $5 Grizzly bear MS70 (Ltd 100) | 1 | $ | 240.00 |
| 3/6/2023 | 2019 FR 5 pc World Class MS70 Ltd. 345 Silver 4 Oz & 30 Grams, | 5 | $ | 250.00 |
| 3/6/2023 | 2019 P F.R. Apollo 11 Silver Dollar PR 70 Ltd 970 | 1 | $ | 175.00 |
| 3/6/2023 | 2019 S.A. Krugerrand PGCS MS70 | 1 | $ | 50.00 |
| 3/6/2023 | 2019 Silver LION DOLLAR ROYAL DUTHCH MINT NGC MS 70 | 1 | $ | 125.00 |
| 3/6/2023 | 2019 Silver American Eagle MS70 ANACS Trump Legacy Series | 1 | $ | 125.00 |
| 3/6/2023 | 2019 Silver American Eagle PCGS MS70 FS Flag | 1 | $ | 95.00 |
| 3/6/2023 | 2019 Silver Kangaroo FDOI MS70 NGC | 2 | $ | 110.00 |
| 3/6/2023 | 2019 Silver Kangaroo MS70 FDI W/E. . . | 1 | $ | 55.00 |
| 3/6/2023 | 2019 Silver Panda PCGS MS70 FS | 1 | $ | 55.00 |
| 3/6/2023 | 2019 SILVER PANDA PCGS FS W/CHAO MS70 | 1 | $ | 55.00 |
| 3/6/2023 | 2019 Silver Panda PCGS FS W/Chao MS70 Silver, 30 Grams, | 1 | $ | 55.00 |
| 3/6/2023 | 2019 W Burnished Silver American Eagle NGC FDI Roseberry | 2 | $ | 250.00 |
| 3/6/2023 | 2020 Cameroon 1000F- Trump- NGC- HR Blacken- FDOI- PF70 UC | 2 | $ | 150.00 |
| 3/6/2023 | 2020 $1 Silver American Eagle PCGS MS70 Dann Reuther | 2 | $ | 150.00 |
| 3/6/2023 | 2020 5 pc Silver Set SAE/ML/Krug/Kang/Philharmonic | 2 | $ | 350.00 |
| 3/6/2023 | 2020 F.R. 3PC SET MS70 | 6 | $ | 1,350.00 |
| 3/6/2023 | 2020 F.R. 3pc. Set MS70 Eagle/Maple/Panda Silver | 2 | $ | 450.00 |
| 3/6/2023 | 2020 2 coin sets $5 GAE & $1 SAE Trump MS70 | 5 | $ | 1,875.00 |
| 3/6/2023 | 2020 FR Silver American Eagle MS70 Trump Ltd. 2020 | 2 | $ | 250.00 |
| 3/6/2023 | 2020 Silver American Eagle FDI MS70 Bressett Silver 1 Oz, | 2 | $ | 190.00 |
| 3/6/2023 | 2020 Silver American Eagle FDI MS70 Cabral Silver 1 Oz, | 2 | $ | 190.00 |
| 3/6/2023 | 2020 Silver American Eagle MS70 Castle Silver 1 Oz | 2 | $ | 190.00 |
| 3/6/2023 | 2020 Silver American Eagle MS70 NGC Moy | 2 | $ | 190.00 |
| 3/6/2023 | 2020 Silver American Eagle MS70 NGC Moy | 2 | $ | 190.00 |
| 3/6/2023 | 2020 Silver American Eagle PCGS MS70 Whitley Silver 1 Oz | 2 | $ | 190.00 |
| 3/6/2023 | 2020 Silver Panda FDI MS70 Cheng | 2 | $ | 110.00 |
| 3/6/2023 | 2020 Silver Panda FDI MS70 Cheng Chou Silver 30 Grams, | 2 | $ | 110.00 |
| 3/6/2023 | 2020 W Burnished Morgan Silver Dollar MS70 Moy FDI | 2 | $ | 150.00 |
| 3/6/2023 | 2020 W Silver American Eagle FDOI BURN. MDS MS70 MOY | 2 | $ | 150.00 |
| 3/6/2023 | 2020 WORLD 5PC SILVER SET | 1 | $ | 175.00 |
| 3/6/2023 | 2021 "Best Coins of The Year" 6 silver Coin Set | 6 | $ | 210.00 |
| 3/6/2023 | 2021 Silver American Eagle ANACS MS70 (Ltd 2021) FR | 2 | $ | 110.00 |
| 3/6/2023 | 2021 Silver American Eagle ANACS MS70 (Ltd 2021) FR | 2 | $ | 110.00 |
| 3/6/2023 | 2021 Silver American Eagle FDOI NGC MS70 Cabral | 2 | $ | 150.00 |
| 3/6/2023 | 2021 Silver American Eagle FDOI NGC MS70 Cabral | 2 | $ | 150.00 |

| 3/6/2023 | 2021 Silver American Eagle FDOI PCGS MS70 Truman | 2 | $ | 150.00 |
|---|---|---|---|---|
| 3/6/2023 | 2021 Silver American Eagle FDOI PCGS MS70 Truman | 2 | $ | 150.00 |
| 3/6/2023 | 2021 Silver American Eagle FDR NGC MS70 Moy | 2 | $ | 150.00 |
| 3/6/2023 | 2021 Silver American Eagle FDR NGC MS70 Moy | 2 | $ | 150.00 |
| 3/6/2023 | 2021 Silver American Eagle mint error MS69 | 2 | $ | 60.00 |
| 3/6/2023 | 2021 W Silver American Eagle MDS NGC PR 70 Moy | 2 | $ | 250.00 |
| 3/6/2023 | 2022 China 40th Ann. Panda NGC PF70 FDI    Saber | 2 | $ | 150.00 |
| 3/6/2023 | CD Silver Panda (PCGS/NGC) 1 oz | 5 | $ | 150.00 |
| 3/6/2023 | CD $10 GOLD INDIAN | 1 | $ | 1,050.00 |
| 3/6/2023 | CD $10 Gold Indian Head | 1 | $ | 1,050.00 |
| 3/6/2023 | CD $10 silver Canadian ANACS | 4 | $ | 120.00 |
| 3/6/2023 | CD $10 Silver Canadian silver ANACS | 4 | $ | 120.00 |
| 3/6/2023 | CD $10 Silver Canadian silver ANACS | 4 | $ | 120.00 |
| 3/6/2023 | CD $2.5 Gold Indian Head | 1 | $ | 265.00 |
| 3/6/2023 | CD $5 Gold Indian Head | 1 | $ | 650.00 |
| 3/6/2023 | CD $5 Gold Liberty MS62 | 1 | $ | 500.00 |
| 3/6/2023 | CD $5 Gold Liberty MS63 (NGC/PCGS) | 5 | $ | 3,000.00 |
| 3/6/2023 | CD $5 Silver Maple Leaf ANACS | 1 | $ | 240.00 |
| 3/6/2023 | CD American Silver American Eagles raw | 1 | $ | 24.00 |
| 3/6/2023 | CD Canadian Silver Mapleleaf ANACS MS70 | 1 | $ | 30.00 |
| 3/6/2023 | CD Morgan Silver Dollar MS66 | 1 | $ | 375.00 |
| 3/6/2023 | CD Silver American Eagle MS70 PCGS Castle | 9 | $ | 855.00 |
| 3/6/2023 | CD Silver American Eagle MS70 PCGS Whitlee | 13 | $ | 1,235.00 |
| 3/6/2023 | CD Silver Canadian Mapleleaf ANACS | 9 | $ | 270.00 |
| 3/6/2023 | CD Silver Canadian Mapleleafs | 3 | $ | 75.00 |
| 3/6/2023 | CD Silver Peace dollars AU+ | 5 | $ | 175.00 |
| 3/6/2023 | ND Silver Proof TS planchet MS62 | 3 | $ | 285.00 |
| 3/6/2023 | 1999 Silver American Eagle | 1 | $ | 35.00 |
| 3/6/2023 | Silver Bullion Round $5 Tokelau Yellow Fin Tuna | 1 | $ | 30.00 |
| 3/6/2023 | 2011 Silver Dollar Design 5 pc. Set | 5 | $ | 650.00 |
| 3/6/2023 | 2000-10 Silver Proof Comm Error T-2 PCGS "Blank Planchet" MS62 | 2 | $ | 150.00 |
| 3/6/2023 | silver round (1 oz) | 7 | $ | 168.00 |
| 3/6/2023 | 2020 Trump Patriot Pack 4 pc. Silver Round Set | 4 | $ | 540.00 |
| 3/6/2023 | Trump Seasons Greetings Silver round (1 Oz) | 1 | $ | 30.00 |
| 11/12/2020 | 1995 $10 GAE MS70 | 1 | $ | 7,600.00 |
| | **TOTAL** | **543** | **$** | **59,426.30** |

**50.** Principal White and telemarketing agents (Lesak and Caruso) of Austin Lloyd and Austin

Coins, all of whom are members of the Austin Lloyd Enterprise, along with the other Austin

Lloyd/Austin Coins agents, representatives, and co-conspirators, Klein, Chancey, and Paradise,

had a meeting of the minds and conspired with one another to run a confidence scheme on

numerous elderly telemarketing customers, and specifically Ms. Morris: (1) to convince her to ship her inventory of silver and gold numismatic and bullion coins to Austin Lloyd/Austin Coins for appraisal and then, once they had gained possession of her coin inventory, (2) to steal and convert her coins for their own enrichment and in furtherance of the Austin Lloyd Enterprise. The ultimate goal of the Defendants, and the primary, if not entire, business model of the Austin Lloyd Enterprise, is to defraud and impoverish elderly customers and by so doing to enrich themselves. As a direct and/or proximate result of the Defendants' above-described wrongful acts and practices, the elderly Ms. Morris has suffered (and continues to suffer) devastating economic damages, which Defendants refuse to remedy.

### FACTS REGARDING THE "*AIDING AND ABETTING*" DEFENDANTS

**51.**   In 2023, dueling lawsuits involving principals of Austin Lloyd brought to light the identities of additional persons and entities that knowingly agreed to aid and abet the fraud schemes of the members of the Austin Lloyd Enterprise.[22]

**52.**   Before becoming the principal owner and mastermind of Austin Lloyd and Austin Coins, White was a principal/half owner in another "rare coin" business ("New York Rarities Limited Liability Company" which White organized on August 19, 2016) with partners Thomas Laviano and Jillian Laviano providing the capital for the business. According to the lawsuit of *New York Rarities Limited Liability Company, Thomas Laviano and Jullian Laviano v. Patrick White, Charisma Perry, et al.*, Index No. 607542/2017 (Supreme Court, Nassau County), the Lavianos discovered that White and Perry were running the same types of coin fraud scams through New

---

[22] The referenced lawsuits are : (1) *Patrick White and Austin Lloyd, Inc. v. Jensen Adoni, et al*.; Index No. 60476/2023; In the New York Supreme Court, Suffolk County and (2) *Jensen Adoni, individually and derivatively on behalf of Austin Lloyd, Inc. v. Austin Coins, Inc., et al*.; Index No 621767/2023; In the New York Supreme Court, Suffolk County.

York Rarities that Plaintiff suffered in this suit.

**53.** When White and the Lavianos had a "falling out" (i.e., when White got caught, and the Lavianos filed suit), White approached family friend Jenson Adoni in 2017 about partnering with him in the coin business. White and Jenson Adoni ("Adoni") used an existing New York corporation that Adoni's father previously had formed "Austin Lloyd, Inc." White began telemarketing operations as "Austin Lloyd, Inc." and assembled a sales staff, many of which, like White, were barred, suspended, or disciplined by FINRA and/or the SEC for illegal or unethical sales practices. The sales and operations staff included Lesak, Christopher M. Paradise, deceased, and Klein.[23]

**54.** In or around 2022, Adoni discovered multiple "red flags" in White's operation of Austin Lloyd and attempted to reign in White and his rogue coin telemarketing sales team, particularly Lesak and Klein. By January 2023, White made overtures to "buy-out" Adoni's interest in Austin Lloyd. Adoni contended that Austin Lloyd had sales in excess of $29,000,000 in 2022 alone, with profits of more than $12,000.000.

**55.** In February 2023, Adoni discovered that White had organized a separate New York corporation, Austin Coins, Inc. ("Austin Coins") and contends that White had been making sales from Austin Lloyd's coin inventory but funneling the proceeds of those sales into Austin Coins.

**56.** White ran Austin Lloyd and Austin Coins as a single entity and failed to observe corporate formalities. In fact, Austin Coins continues to do business as "Austin Lloyd, Inc." For all practical purposes, Austin Lloyd and Austin Coins are run as one and the same, and their funds and finances are commingled.

---

[23] On page 17, paragraph 129 of the complaint in *Adoni v. Austin Coins, et al.*, Adoni contends that "White made [Austin Lloyd, Inc.] a haven for disgraced brokers because they could employ sales tactics which were utilized to sell stocks in an industry that was generally unrelated."

**57.** Austin Lloyd's Chase bank account records for <u>January 2022 through February 2023</u> document the following transactions involving certain of the Individual Defendants and "Aiding and Abetting" Defendants in this case:

- **$821,732.65** in transfers from Austin Lloyd to Charisma Perry ("Perry"), White's *inamorata*[24]

- **$1,805,220.52** in transfers from Austin Lloyd directly to White, to PWH, to PWI or to White's American Express credit card

- **$1,422,154.54** in cash withdrawals (by White)

- **$1,745,000** in transfers from Austin Lloyd to Lesak's company, Bullion Musclef

- **$620,000** via six (6) payments from Austin Lloyd to Klein (via wire transfers) and

- **$208,000** via five (5) payments to CP&A (the deceased Christopher M. Paradise's company).

**58.** Adoni's complaint further asserts that Austin Lloyd and White made payments and transfers to White's other companies, the "Aiding and Abetting" Defendants*,* NYFG, CMBC, and Just John, to CNP13 (owned by White and/or Perry), and to the deceased Paradise's company, CP&A, thereby converting and attempting to launder monies that White and the Austin Lloyd Enterprise had defrauded and stolen from telemarketing customers, including Ms. Morris.

## CLAIMS FOR RELIEF/CAUSES OF ACTION

### COUNT I

### VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO) AGAINST ALL *DEFENDANTS* FOR CONSPIRACY TO PARTICIPATE IN AND COMMIT A PATTERN OF MAIL AND WIRE FRAUDS AND MONEY LAUNDERING

**59.** Plaintiff incorporates by reference the preceding paragraphs, including specifically all factual statements and allegations therein, as though fully copied and set forth below at length.

---

[24] In a Request for Information [Dkt. No. 112] filed in the *White v. Adoni, et al.* case (Index No. 60476/2023), it appears that between January 2022 and December 2022, Perry actually received **over $3 million** from Austin Lloyd.

**60.**  At all relevant times, Plaintiff was a "person" within the meaning of 18 U.S.C. § 1964(c).

**61.**  At all relevant times, Austin Lloyd, Inc. was an "enterprise" within the meaning of 18 U.S.C. § 1961(4).

**62.**  At all relevant times, Individual Defendant White was a "person" within the meaning of 18 U.S.C. §§ 1962(b), 1962(c) and 1962(d).

**63.**  At all relevant times, Corporate Defendant Austin Coins, Inc. was a "person" within the meaning of 18 U.S.C. §§ 1962(b), 1962(c) and 1962(d).

**64.**  At all relevant times, each of the other Individual Defendants and Conspiracy Defendants, Lesak (aka "Mike Todd"), Caruso, Klein, Chancey, and Paradise, was a "person" within the meanings of 18 U.S.C. §§ 1961(3), 1962(c), and 1962(d) and, to the extent that each "acquire[d] or maintain[ed], directly or indirectly, any interest in or control of" the Austin Lloyd Enterprise, 1962(b).

**65.**  The Individual Defendants and Austin Coins, as members of the Austin Lloyd Enterprise had a meeting of the minds and agreed to commit a series of mail and wire frauds, as well as money laundering, constituting a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c) against Ms. Morris, and numerous other elderly citizens, as detailed *supra*, in violation of 18 U.S.C. § 1962(d). The particular predicate acts of the conspiracy against multiple elderly telemarketing customers, including Ms. Morris, began no later than 2020[25] and continue through the present. The Individual Defendants, White, Lesak (aka "Mike Todd"), and Caruso, and Corporate Defendant,

---

[25] One of the victims whose case is referenced in **footnote 4**, *supra*, Stephen E. Mauch, alleged in his Complaint that he was first contacted by these same telemarketing defendants in early 2021. Another elderly victim, AnnaMarie F. Eakins, alleges that the scheme by these same telemarketing defendants to defraud her and steal her coin inventory began in mid-2021. Ms. Morris's first interactions with members of the Austin Lloyd Enterprise was in 2020, although the appraisal/conversion scam was not sprung on her until 2022. It is clear that Defendants have been running a coin fraud telemarketing racket against elderly customers for over three (3) years.

Austin Coins, each participate in the Austin Lloyd Enterprise by taking at least some part in controlling and directing the affairs of said enterprise, and the Individual Defendants, Lesak (aka "Mike Todd") and Caruso, who directly interacted with Plaintiff as telemarketing sales agents or representatives of Austin Lloyd and Austin Coins and as persons associated with the Austin Lloyd Enterprise, agreed to facilitate and commit the individual predicate acts of fraud and money laundering as part of the fraudulent scheme targeting numerous elderly customers, and Ms. Morris in particular, in furtherance of the Austin Lloyd Enterprise and to enrich themselves.

66.  This conspiracy violated 18 U.S.C. § 1962(c) in that it consisted of a pattern of racketeering activity, specifically multiple instances of mail fraud (in violation of 18 U.S.C. § 1341), wire fraud (in violation of 18 U.S.C. § 1343), and money laundering (in violation of 18 U.S.C. § 1956(a)(1)). White and Schmidt, as principals, and, on information and belief, Lesak, Caruso, Klein, Chancey, and Paradise, as officers and/or representatives of the Austin Lloyd Enterprise, knew their telemarketing sales practices and tactics were misleading and unlawful and would cause their elderly customers, including Plaintiff, to suffer damages that were reasonably foreseeable by them and/or anticipated as a substantial factor and a natural consequence of their pattern of unlawful activity.

67.  Principal White, and, on information and belief, Lesak, Caruso, Klein, Chancey, and Paradise, as officers and/or representatives, are members of the Austin Lloyd Enterprise and as co-conspirators are liable for all of the actions committed by all of the co-conspirators within the conspiracy and are liable for all of the damages sustained by Plaintiff that were caused by any of the members of the conspiracy, regardless of whether they were themselves directly involved in any *particular* aspect of the Austin Lloyd Enterprise.

68.  The pattern of unlawful activity conducted as individuals and in their representative capacities

as principals and representatives of the Austin Lloyd Enterprise, by White, as principal, and, on information and belief, by Lesak, Caruso, Klein, and Chancey, as officers, and/or representatives, proximately and/or directly caused Plaintiff to suffer injury to her business and/or property within the meaning of 18 U.S.C. § 1964(c).

**69.**  At all relevant times, each of the "*Aiding and Abetting*" Defendants, Charisma Perry ("Perry"), P. White Holdings, LLC ("PWH"), P White Inc. ("PWI"), New York Federal Gold, LLC ("NYFG"), Cash Money Bullion Corp. ("CMBC"), Just John, LLC ("Just John"), CNP13, Inc. ("CNP13"), Bullion Muscle Inc. ("Bullion Muscle"), and BKGS Holdings, Inc. ("BKGS"), and Christopher Paradise & Associates, Inc. ("CP&A"), was a "person" within the meanings of 18 U.S.C. §§ 1961(3), 1962(c), and 1962(d), and each of them agreed to join the Austin Lloyd Enterprise with knowledge that White and the Individual Defendant members of the enterprise would commit and were committing multiple predicate acts of mail and wire fraud and money laundering and that the exorbitant financial fruits of those predicate acts of fraud and money laundering were being transferred from and through the Austin Lloyd Enterprise to the "Aiding and Abetting" Defendants via multiple transfers in order to "launder" and hide those funds from Ms. Morris and other elderly victims of the Austin Lloyd Enterprise.

**70.**  As a direct and proximate result of the violations set forth above, Ms. Morris has been injured. The Defendants' 18 U.S.C. § 1962(d) conspiracy to violate 18 U.S.C. § 1962(c) is the proximate cause of this injury. Pursuant to the provisions of 18 U.S.C. § 1964(c), Ms. Morris is entitled to bring this action and recover treble damages, the costs of bringing this suit, prejudgment interest and attorneys' fees.

## COUNT II

**VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO) AGAINST THE "*AIDING AND ABETTING*" *DEFENDANTS* FOR AIDING AND ABETTING MONEY LAUNDERING**

**71.** Plaintiff incorporates by reference the preceding paragraphs, including specifically all factual statements and allegations therein, as though fully copied and set forth below at length.

**72.** Plaintiff further incorporates by reference all factual statements and allegations set out in Count III, *infra*, and Count IV, *infra*, as if fully copied and set forth below at length.

**73.** Each of the "Aiding and Abetting" Defendants, Charisma Perry ("Perry"), P. White Holdings, LLC ("PWH"), P White Inc. ("PWI"), New York Federal Gold, LLC ("NYFG"), Cash Money Bullion Corp. ("CMBC"), Just John, LLC ("Just John"), CNP13, Inc. ("CNP13"), Bullion Muscle Inc. ("Bullion Muscle"), BKGS Holdings, Inc. ("BKGS"), and Christopher Paradise & Associates, Inc. ("CP&A"), had knowledge of the primary RICO frauds of mail fraud and wire fraud in violation of 18 U.S.C. §§ 1341, 1343 by the Individual Defendants, Lesak and Caruso, as well as White, Klein, Chancey, and Paradise, in furtherance of the Austin Lloyd Enterprise and the primary RICO offense of money laundering in violation of 18 U.S.C. § 1956(a)(1)).

**74.** Each of the "Aiding and Abetting*"* Defendants, provided substantial assistance in the money laundering operation of the Individual Defendants in furtherance of the Austin Lloyd Enterprise by receiving, accepting, and retaining monies from the Austin Lloyd Enterprise with knowledge that he/she/it was helping to launder and hide the financial fruits of the primary frauds perpetrated by the Individual Defendants against Ms. Morris and the numerous other elderly victims of the Austin Lloyd Enterprise.

**75.** As a direct and proximate result of the violations set forth above, Ms. Morris has been injured. The "Aiding and Abetting" Defendants' 18 U.S.C. § 1962(d) aiding and abetting the violation 18 U.S.C. § § 1956(a)(1) is the proximate cause of this injury. Pursuant to the provisions of 18 U.S.C. § 1964(c), Ms. Morris is entitled to bring this action and recover treble damages, the costs of bringing this suit, prejudgment interest and attorneys' fees.

36

**COUNT III**
**VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT**
**ORGANIZATIONS ACT (RICO) AGAINST THE *INDIVIDUAL DEFENDANTS* AND**
**AUSTIN COINS FOR MAIL FRAUD AND WIRE FRAUD (18 U.S.C. §§ 1341, 1343)**

**76.**  Plaintiff incorporates by reference the preceding paragraphs, including specifically all factual statements and allegations therein, as though fully copied and set forth below at length.

**77.**  By the acts described herein, the Individual Defendants, particularly White, Lesak (aka "Mike Todd"), and Caruso, as well as Austin Coins, as members of the Austin Lloyd Enterprise, knowingly executed or intentionally participated in a scheme that defrauded, and was intended to defraud, Ms. Morris, and numerous other elderly citizens, and employed the use of the interstate mails, as an integral part of said scheme and in furtherance thereof.

**78.**  Central to, and in furtherance of, that scheme, and as described above, the Individual Defendants, in their capacities of telemarketing sales agents, principals of Austin Coins, and "investment advisors," made misrepresentations over the telephone to Ms. Morris as to the agreement to appraise her coin collection and sought to trick her into accepting unauthorized and inadequate consideration (shipping via private carrier the Anna Cabral "30 pieces of silver") in trade to set up a novation defense and finally simply stealing and converting her coin collection. The Individual Defendants' use of the wires in perpetrating their schemes was not merely incidental to their fraud and misrepresentations but rather, given that the scheme was dependent upon telemarketing technology, was instrumental to their scheme in that Ms. Morris was never able to see them in person, look them in the eye and gauge their sincerity and veracity.

**79.**  The means by which the Individual Defendants were able to con Ms. Morris into trusting them and shipping her coins to them for appraisal in furtherance of the scheme and thereby defraud her of a portion of her life savings is the unholy combination of the obscure inner workings of the retail precious metals telemarketing industry and the soulless greed of the members of the Austin

Lloyd Enterprise. That all interactions, communications, and sales transpired via wire (i.e. telephone) and mail was not coincidental or happenstance. Rather, telemarketing enabled and defined the scheme.

**80.**  As a direct and proximate result of the fraudulent theft of the coin collection set forth above and summarized in Table 1, Ms. Morris has been injured. The Individual Defendants' multiple, repeated violations of 18 U.S.C. §§ 1341 and 1343 are the proximate cause of this injury. Pursuant to the provisions of 18 U.S.C. § 1964(c), Ms. Morris is entitled to bring this action and recover treble damages, the costs of bringing this suit, prejudgment interest, and attorneys' fees.

**COUNT IV**

**VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT
ORGANIZATIONS ACT (RICO) FOR MONEY LAUNDERING
(18 U.S.C. § 1956(a)(1)) (AGAINST DEFENDANTS WHITE, PWH,
PWI, NYFG, CMBC, JUST JOHN, PERRY, CNP31, LESAK, BULLION MUSCLE,
CARUSO, KLEIN, CHANCEY, BKGS, PARADISE AND CP&A)**

**81.**  Plaintiff incorporates by reference the preceding paragraphs, including specifically all factual statements and allegations therein, as though fully copied and set forth below at length.

**82.**  Defendants White, and his shell companies, PWH, PWI, NYFG, CMBC, and Just John, Perry and CNP13, Lesak, and his shell company, Bullion Muscle, Caruso, Chancey, and his shell company, BKGS, Klein, Paradise, and his shell company, CP&A laundered monies defrauded from Ms. Morris and other elderly customers of Austin Lloyd and Austin Coins in violation of 18 U.S.C. § 1956(a)(1) and in furtherance of the Austin Lloyd Enterprise.

**83.**  There were numerous financial transactions authorized and conducted by White through the Austin Lloyd Enterprise which transactions involved proceeds of specified unlawful activity (specifically, mail fraud and wire fraud under 18 U.S.C. § 1961(1)) as defined in 18 U.S.C. § 1956(c)(7) and in which White, PWH, PWI, NYFG, CMBC, and Just John, Perry, CNP31, Lesak, Bullion Muscle, Caruso, Klein, Chancey, BKGS, Paradise, and CP&A participated. Each of these

Defendants had actual knowledge that the property involved in these financial transactions represented the proceeds of some form of unlawful activity. Each of these Defendants had actual knowledge that the transactions were designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, and/or the control of the proceeds of the specified unlawful activities. 18 U.S.C. § 1956(a)(1)(B)(i). In addition, or else in the alternative, each of these Defendants conducted or attempted to conduct the transactions with the intent to promote the carrying on of the specified unlawful activities. *Id.* at § 1956(a)(1)(A)(i).[26]

**84.**   Defendants White, and his shell companies, PWH, PWI, NYFG, CMBC, and Just John, Perry and CNP13, Lesak, and his shell company, Bullion Muscle, Caruso, Chancey, BKGS, Klein, Paradise, and his shell company, CP&A laundered monies defrauded from Ms. Morris and other elderly customers of the Corporate Defendants in violation of 18 U.S.C. § 1956(a)(1). As a direct and proximate result of this violation, Ms. Morris has been injured. Pursuant to the provisions of 18 U.S.C. § 1964(c), Ms. Morris is entitled to bring this action and recover treble damages, the costs of bringing this suit, prejudgment interest and attorneys' fees.

**V.**

**FRAUD AND/OR FRAUDULENT CONCEALMENT**
**(AGAINST AUSTIN LLOYD, AUSTIN COINS AND *INDIVIDUAL***
***DEFENDANTS*, WHITE, LESAK AND CARUSO)**

**85.**   The Plaintiff incorporates by reference the preceding paragraphs, including specifically all factual statements and allegations therein, as though fully copied and set forth below at length,

---

[26] "'While plaintiffs need not plead money laundering with great particularity, they must nonetheless plead all essential elements of the offenses.' *Bernstein v. Misk*, 948 F. Supp. 228, 236 (E.D.N.Y. 1997) (citing *Ray v. General Motors Acceptance Corp.*, No. 92 Civ. 5043, 1995 U.S. Dist. LEXIS 21467 (E.D.N.Y. Mar. 28, 1995). . . ." *Schlesinger v. Schlesinger*, No. 05-CV-5016-ADS-WDW, 2007 U.S. Dist. LEXIS 110930, at *37 (E.D.N.Y. 2007) (also citing *Leung v. Law*, 387 F. Supp. 2d 105, 114 (E.D.N.Y. 2005) for the proposition that pleadings alleging money laundering are not subject to the stringent particularity requirement of Rule 9(b)).

and, pleading further, or else in the alternative, alleges:

**86.**   Via a series of oral and written misrepresentations and high-pressure tactics (as set out in detail above), White, as principal of Austin Lloyd and Austin Coins, and Lesak and Caruso, officers and/or telemarketing representatives of Austin Lloyd and Austin Coins, and holding themselves out as "*senior account advisors*," convinced Plaintiff to ship her coin collection to them for "appraisal-only" and then absconded with and converted Plaintiff's coin collection, thereby defrauding Plaintiff pursuant to New York common law.

**87.**   In addition, the Defendants are liable for fraudulent concealment against Ms. Morris. The elements of fraudulent concealment are identical to the elements for fraud with the addition that the defendant must have a duty to disclose material information and failed to do so.

**88.**   The Defendants, Austin Lloyd and Austin Coins, as well as their individual principal, White, and their telemarketing sales agents, Lesak and Caruso, represented to Ms. Morris  that they were "*account advisors*" and "*appraisers*" and thus had a duty to disclose to her that they were not qualified to appraise her coin collection and had no intention of appraising her coin collection; rather, their intent from the outset was to convince her to relinquish possession of her coins so they could convert and steal the coin collection to enrich themselves. The Defendants, and specifically Lesak, and Caruso, had a duty to make such disclosures based upon the "special facts" doctrine, which provides that a duty to disclose arises when one party's superior knowledge of essential facts renders a transaction without disclosure inherently unfair. The "special facts" doctrine is applicable to the present case because the withheld and hidden material information was "peculiarly within the knowledge" of the Defendants, and Plaintiff could not have discovered such information through the exercise of ordinary intelligence. White, as principal of Austin Lloyd and Austin Coins, is liable for the fraud of his agents, Lesak and Caruso.

89.   The Defendants, Austin Lloyd and Austin Coins, and their individual principals and telemarketing sales agents, made the above-detailed false representations to Ms. Morris with the intent that she rely upon them and with full knowledge that such representations were false when made. Ms. Morris did, in fact, rely on these material and false representations when deciding to ship her coin inventory to Austin Lloyd for appraisal, only for Defendants to convert and steal that coin inventory with no compensation, all of which resulted in Ms. Morris's financial damages and the Defendants' obscene financial gain.

90.   As a direct and/or proximate result of the false and misleading representations attributable to Austin Lloyd and Austin Coins and their principal, White, through telemarketing sales agents, specifically Lesak and Caruso, Ms. Morris has suffered (and continues to suffer) damages arising from and related to the theft and conversion of her coin collection, as well as mental anguish damages.

91.   By virtue of the confidential business relationships created and established between Ms. Morris and the self-identified Austin Lloyd/Austin Coins "senior account advisors," Lesak and Caruso, the Defendants had a duty to disclose the above-described concealed material facts to Ms. Morris. The deliberate silence, when they had a duty to speak, and the resulting nondisclosure of the above-described concealed material facts, are the equivalent of false representations and/or omissions. Such false representations and/or omissions were made knowingly and intentionally by Lesak and Caruso, in both their individual capacities and their capacities as agents, employees, and/or officers of Austin Lloyd and Austin Coins, and their principal, White, and with their knowledge and approval, or, at the very least, in reckless disregard of Plaintiff's rights and interests.

92.  Ms. Morris justifiably relied on the false representations and/or omissions of Lesak and Caruso, both their individual capacities and their capacities as agents, employees, and/or officers of Austin Lloyd and Austin Coins, to her financial detriment. Defendants' wrongful actions constitute fraud at common law.

93.  Defendants, Lesak and Caruso, in both their individual capacities and their capacities as agents, employees, and/or officers of Austin Lloyd and Austin Coins, and their principal, White, concealed their wrongful actions with the intent to mislead and defraud Ms. Morris. Ms. Morris was not aware of, nor, through the exercise of due diligence, could she have become aware of Defendants' wrongful actions until such wrongful actions were consummated. Due to the Parties' confidential business relationships, which were predicated on their mutual trust and confidence, and Defendants' superior knowledge and/or means of knowledge, Lesak and Caruso, in both their individual capacities and their capacities as agents, employees, and/or officers of Austin Lloyd and Austin Coins, and their principal, White, had a duty to disclose to Plaintiff the above-detailed materially false information. Defendants' failure to do so constitutes fraudulent concealment under New York law  which proximately caused Ms. Morris's financial damages and the Defendants' obscene financial gain.

### COUNT VI
### NEGLIGENT MISREPRESENTATION
### (AGAINST AUSTIN LLOYD, AUSTIN COINS AND *INDIVIDUAL DEFENDANTS*, WHITE, LESAK AND CARUSO)

94.  The Plaintiff incorporates by reference the preceding paragraphs, including specifically all factual statements and allegations therein, as though fully copied and set forth below at length, and, in addition, or else pleading in the alternative, alleges:

95.  To the extent that the acts, omissions, and representations of Lesak and Caruso to Plaintiff were determined not to rise to level of fraud, Plaintiff pleads in the alternative, that Lesak and

Caruso, in both their individual capacities and their capacities as agents, employees, and/or officers of Austin Lloyd and Austin Coins, and their principal, White, were at minimum negligent in making such misrepresentations as to the appraisal of Ms. Morris' coin collection. Specifically, Lesak and Caruso negligently supplied false information that they would appraise her coin collection and take no other actions without her additional written consent which guided Ms. Morris in her decision to ship her coin collection to Austin Lloyd and Austin Coins.

96.     Specifically, Lesak and Caruso, while working as telemarketing representatives of Austin Lloyd and Austin Coins, and for their principal, White, and expressly representing themselves to be "senior account advisors," offered to appraise Ms. Morris's coin collection, but when she shipped said coin inventory to Austin Lloyd/Austin Coins, they failed provide any appraisal and refused to return said coins but instead converted and stole the coin collection and remitted to Ms. Morris no proceeds of any sales of the coin collection. To the extent that the acts, omissions, and representations of Lesak and Caruso, which are attributable to Austin Lloyd and Austin Coins and to their principal, White, were determined not to rise to level of fraud, Plaintiff pleads in the alternative, that Lesak and Caruso were at minimum negligent in making such misrepresentations as to the appraisal of Plaintiff's coin collection. Specifically, Lesak and Caruso, individually and as agents of the Corporate Defendants, negligently supplied false information that guided Ms. Morris in her decision to ship the coin collection to Austin Lloyd and Austin Coins.

97.  Lesak and Caruso, individually and as agents of the Corporate Defendants and White, failed to exercise reasonable care and competence in obtaining, confirming the accuracy of, and communicating such information to Ms. Morris and/or making the above-described false and material misrepresentations and omissions.

**98.** Ms. Morris justifiably relied upon the negligent misrepresentations of Lesak and Caruso, individually and as agents of the Corporate Defendants, in her dealings with Austin Lloyd and Austin Coins, and those misrepresentations directly and/or proximately caused her to suffer damages to the financial benefit of Austin Lloyd and Austin Coins, and White, Lesak, and Caruso. Lesak's and Caruso's wrongful conduct, which is attributable to Austin Lloyd and Austin Coins, and White, constitutes negligent misrepresentation under New York common law.

**COUNT VII**
**VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349**
**(AGAINST AUSTIN LLOYD, AUSTIN COINS AND *INDIVIDUAL***
***DEFENDANTS*, WHITE, LESAK AND CARUSO)**

**99.** The Plaintiff incorporates by reference the preceding paragraphs, including specifically all factual statements and allegations therein, as though fully copied and set forth below at length, and, in addition, or else pleading in the alternative, alleges:

**100.** The actions of Lesak and Caruso described herein, all of which are attributable to Austin Lloyd and Austin Coins, and White, constitute deceptive acts and practices in the conduct of business, substantially affecting trade or commerce in New York in violation of the New York Consumer Protection from Deceptive Acts and Practices, Gen. Bus. Law § 349.

**101.** More specifically, the Defendants, individually and through the Austin Lloyd and Coins principals, telemarketer employees and representatives, knowingly and intentionally utilized unlawful, false, misleading, deceptive, and unconscionable high-pressure sales tactics and misrepresentations to convince Ms. Morris to ship her coin collection to Austin Lloyd/Austin Coins for appraisal which never occurred and for which Ms. Morris received no compensation, through one or more of the following deceptive acts or practices, including:

    a. Holding themselves out as "investment advisors" or "senior account advisors" while having no such expertise;

44

    b.  Convincing Plaintiff to ship her coin collection to Defendants for appraisal, but upon receipt of the coins, simply absconding with the coins and paying Plaintiff nothing in return; and

    c.  Various other acts and practices that may be uncovered during discovery.

**102.** As a direct and proximate result of the Defendants' unlawful, unfair, and deceptive acts and practices, all of which are attributable to Austin Lloyd and Austin Coins, and White, Ms. Morris has suffered actual damages of at least at least Fifty-Nine Thousand Four Hundred Twenty-Six and 30/100s Dollars ($59,426.30).

**COUNT VIII**
**MONEY HAD AND RECEIVED**
**(AGAINST THE "*AIDING AND ABETTING*" DEFENDANTS)**

**103.** The Plaintiff incorporates by reference the preceding paragraphs, including specifically all factual statements and allegations therein, as though fully copied and set forth below at length and, in addition, or else pleading in the alternative, alleges:

**104.** By their above-described wrongful actions and/or inaction: (1) each of the "Aiding and Abetting" Defendants received money belonging to Plaintiff, (2) each of the "Aiding and Abetting" Defendants benefitted from receipt of the money, and (3) under principles of equity and good conscience, the "Aiding and Abetting" Defendants should not be permitted to keep the money. The "Aiding and Abetting" Defendants, therefore, should be compelled to refund such wrongfully received and retained funds to Plaintiff under the equitable doctrine of money had and received.

**COUNT IX**
**UNJUST ENRICHMENT**
**(AGAINST THE "*AIDING AND ABETTING*" DEFENDANTS)**

**105.** The Plaintiff incorporates by reference the preceding paragraphs, including specifically all factual statements and allegations therein, as though fully copied and set forth below at length and,

in addition, or else pleading in the alternative, alleges:

**106.** The "Aiding and Abetting" Defendants (and possibly other persons and entities, as-yet unidentified) have been unjustly enriched by receipt of funds of and from Austin Lloyd and/or Austin Coins (and White) which were obtained through fraud or negligence, and/or stolen from Plaintiff.

**107.** Accordingly, Plaintiff seeks to impose a constructive trust over (and recover) all amounts by which the "Aiding and Abetting" Defendants have been unjustly enriched.

**ALTER EGO**

**108.** Plaintiff incorporates by reference the preceding paragraphs, including specifically all factual statements and allegations therein, as though fully copied and set forth below at length.

**109.** Alter-ego liability is established upon a showing that a defendant has complete domination of a corporation in respect to the transaction at issue and that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury. Because a decision to pierce the corporate veil will necessarily depend on the attendant facts and equities of the case at issue, there are no definitive rules governing the circumstances when this power may be exercised.

**110.** Based upon information and belief, each of the Defendants, White, Lesak, Caruso, Klein, Chancey, and Paradise, individually and collectively, used the corporate form of Austin Lloyd and Austin Coins as an alter-ego and as a mere tool or business conduit. These Defendants, or some of them, completely dominate Austin Lloyd, Austin Coins, PWH, PWI, NYFG, CMBC, Just John, CNP13, Bullion Muscle, BKGS, and/or CP&A to shield assets and thus cause a diminution of available resources from which Plaintiff may obtain satisfaction of the damages directly and/or proximately caused by Defendants' wrongful conduct. Upon information and belief, there are both documented and undocumented funds transfers between White and/or Austin Lloyd and Austin Coins to Perry, PWH, PWI, NYFG, CMBC, Just John, CNP13, Bullion Muscle, BKGS, and/or

CP&A, and there is an unclear allocation of profit and losses between Austin Lloyd and Austin Coins and White and the other Individual Defendants. In short, Austin Lloyd and Austin Coins are substantially one and the same with each other and one and the same with White and possibly the other Defendants, or some of them, and the relationship between Austin Lloyd/Austin Coins and White and the Defendants (or some of them) is an illegitimate use of the corporate form.

111. Pleading further, based on information and belief, Defendants PWH, PWI, NYFG, CMBC, and Just John are each owned, operated, and controlled solely and entirely by White. Upon information and belief, White uses the corporate forms of PWH, PWI, NYFG, CMBC, and Just John as alter-egos and as mere tools or business conduits. White completely dominates PWH, PWI, NYFG, CMBC, and Just John to shield assets and thus cause a diminution of available resources from which Plaintiff may obtain satisfaction of the damages directly and/or proximately caused by Defendants' wrongful conduct. Upon information and belief, there are both documented and undocumented funds transfers between Austin Lloyd, Austin Coins, and/or White and PWH, PWI, NYFG, CMBC, and Just John, and there is an unclear allocation of profit and losses between PWH, PWI, NYFG, CMBC, and Just John and White. In short, PWI, NYFG, CMBC, and Just John are each substantially one and the same with White, and the relationship between White and each of these Defendants is an illegitimate use of the corporate form.

112. Pleading further, based on information and belief, Defendant CNP13, Inc. ("CNP13") is owned, operated, and controlled solely and entirely by White and/or Charisma Perry ("Perry"). Upon information and belief, White and/or Perry use the corporate form of CNP13 as an alter-ego and as a mere tool or business conduit. White and/or Perry completely dominate CNP13 to shield assets and thus cause a diminution of available resources from which Plaintiff may obtain satisfaction of the damages directly and/or proximately caused by Defendants' wrongful conduct.

47

Upon information and belief, there are both documented and undocumented funds transfers between Austin Lloyd, Austin Coins, and/or White and CNP13, and there is an unclear allocation of profit and losses between CNP13 and White and/or Perry. In short, CNP13 is substantially one and the same with White and/or Perry, and the relationship between White and/or Perry and CNP13 is an illegitimate use of the corporate form.

**113.** Pleading further, based on information and belief, Defendant Bullion Muscle Inc. ("Bullion Muscle") is owned, operated, and controlled solely and entirely by Eric P. Lesak ("Lesak"). Upon information and belief, Lesak uses the corporate form of Bullion Muscle as an alter-ego and as a mere tool or business conduit. Lesak completely dominates Bullion Muscle to shield assets and thus cause a diminution of available resources from which Plaintiff may obtain satisfaction of the damages directly and/or proximately caused by Defendants' wrongful conduct. Upon information and belief, there are both documented and undocumented funds transfers between Austin Lloyd, Austin Coin and/or White and Bullion Muscle, and there is an unclear allocation of profit and losses between Lesak and Bullion Muscle. In short, Bullion Muscle is substantially one and the same with Lesak, and the relationship between Lesak and Bullion Muscle is an illegitimate use of the corporate form.

**114.** Pleading further, based on information and belief, Defendant BKGS Holdings, Inc. ("BKGS") was owned, operated, and controlled solely and entirely by Defendant Brandon E. Chancey. Upon information and belief, Chancey used the corporate form of BKGS as an alter-ego and as a mere tool or business conduit. Chancey completely dominated BKGS to shield assets and thus cause a diminution of available resources from which Plaintiff may obtain satisfaction of the damages directly and/or proximately caused by Defendants' wrongful conduct. Upon information and belief, there are both documented and undocumented funds transfers between Austin Lloyd,

Austin Coins, and/or White and BKGS, and there was an unclear allocation of profit and losses between BKGS and Chancey. In short, BKGS was substantially one and the same with Chancey, and the relationship between Chancey and BKGS was an illegitimate use of the corporate form.

**115.** Pleading further, based on information and belief, Defendant Christopher Paradise & Associates, Inc. ("CP&A") was owned, operated, and controlled solely and entirely by Christopher Paradise ("Paradise"), deceased, and is now owned, operated, and controlled by the representative(s) of the estate of Christopher Paradise. Upon information and belief, Paradise used the corporate form of CP&A as an alter-ego and as a mere tool or business conduit. Paradise completely dominated CP&A to shield assets and thus cause a diminution of available resources from which Plaintiff may obtain satisfaction of the damages directly and/or proximately caused by Defendants' wrongful conduct. Upon information and belief, there are both documented and undocumented funds transfers between Austin Lloyd, Austin Coins, and/or White and CP&A, and there was an unclear allocation of profit and losses between CP&A and Paradise. In short, CP&A was substantially one and the same with Paradise, and the relationship between Paradise and CP&A was an illegitimate use of the corporate form.

## RESPONDEAT SUPERIOR

**116.** Plaintiff incorporates by reference the preceding paragraphs, including specifically all factual statements and allegations therein, as though fully copied and set forth below at length.

**117.** Defendants Austin Lloyd and Austin Coins also are liable for the above-detailed wrongful acts committed by their principals, officers, agents, representatives, and employees during the course and scope of their agency/employment by Austin Lloyd and Austin Coins; to wit, the principals', officers', agents', employees', and representatives' wrongful conduct was committed (i) within their general authority, (ii) in furtherance of Austin Lloyd's/Austin Coins' business, and

(iii) to accomplish the objective for which the principals/agents/employees/representatives were retained, all of which directly and/or proximately caused Plaintiff to suffer damages to the financial benefit of Defendants—and for which Defendant is liable under the doctrine of *respondeat superior*.

**RELIEF REQUESTED**

**118.  RECISSION**.  Based on Defendants' above-described wrongful conduct, Plaintiff is entitled to recission of the transaction(s) at issue by which Defendants fraudulently failed to appraise Plaintiffs' coin collection but instead converted and stole same. All conditions precedent to Plaintiff's claims for relief have been performed and/or occurred.

**119.  ACTUAL AND CONSEQUENTIAL DAMAGES.**   As direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered (and continues to suffer) damages in the form of, inter alia, the amounts Plaintiff lost in the fake appraisal and conversion scam and the mental anguish she has suffered in connection with such scam in an amount to be determined by the trier of fact.  All conditions precedent to Plaintiff's claims for relief have been performed and/or occurred.

**120. TREBLE DAMAGES.**  Plaintiff also is entitled to treble damages for Defendants' knowing, willful and intentional wrongful conduct pursuant to 18 U.S.C. § 1964(c) and in violation of New York's GBL § 349 (up to the applicable cap).  All conditions precedent to Plaintiff's claims for relief have been performed and/or occurred.

**121.  EXEMPLARY DAMAGES**.  Defendants' wrongful actions (and failure to disclose such wrongful actions) were committed intentionally, willfully, with malice and/or with conscious and/or reckless disregard for Plaintiff's rights and interests.  Accordingly, Plaintiff also is entitled

to an award of punitive damages against Defendants, both as punishment and to discourage such wrongful conduct in the future.

**122. ATTORNEYS' FEES, LITIGATION EXPENSES AND COSTS**.   Plaintiff also is entitled to recover his reasonable and necessary attorneys' fees, litigation expenses and court costs actual damages to be determined by the trier of fact.

**WHEREFORE**, Plaintiff, Mary L. Morris, requests judgment in her favor and  against the Defendants, jointly and severally, awarding compensatory damages for all actual and consequential losses, treble damages under 18 U.S.C. § 1964(c), exemplary damages, and all amounts by which Defendants have been unjustly enriched; directing an equitable accounting for all benefits, consideration and profits received, directly or indirectly, by Defendants, including the imposition of  a constructive trust and the voiding of unlawful transfers; and awarding attorneys' fees and litigation expenses pursuant to 18 U.S.C. § 1964(c) and New York G.B.L. § 349(h) and the costs of suit pursuant to 28 U.S.C. § 1920 and Fed. R. Civ. P. 54(d); together with pre-judgment interest pursuant to New York C.P.L.R. § 5004 or any higher applicable rate and post-judgment interest at the highest legal rate, and such other and further relief as the Court deems just, proper, and equitable.

## JURY DEMAND

Plaintiff respectfully demands a trial by jury on all of her claims and causes of action so triable.

Dated: Thornwood, New York
        January 14, 2024

**LAW OFFICES OF KENNETH G. WALSH**


By:__/s/ Kenneth G. Walsh_____
        Kenneth G. Walsh (1654)
        59 Kensico Road, Suite 7
        Thornwood, New York 10594
        (929) 241-7307
        *kwalsh@kgwalshlegal.com*

        -and-

**STEVENS LAW FIRM**

        R. Lyn Stevens (pro hac vice forthcoming)
        210 Clearview Avenue, Suite C
        Friendswood, Texas 77546
        (409) 880-9714
        *Lyn@Stevens.Law*
        Texas Bar No. 19189020

        *Attorneys for Plaintiff,*
        *Mary L. Morris*